Gregory SCHWARTZKOPF, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 45S00–8803–CR–344.

Supreme Court of Indiana.

June 21, 1989.

Nathaniel Ruff, Appellate Public Defender, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Public Defender, Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Gregory Schwartzkopf was convicted of the crime of Murder following a jury trial in Lake Superior Court and sentenced to a term of forty (40) years.

The only question presented for our review in this direct appeal is Schwartzkopf's claim that his confession was not given voluntarily and should have been suppressed by the trial court.

The facts tend to show Schwartzkopf is the brother of Dwayne Schwartzkopf, the victim's boyfriend. On April 3, 1987, the

victim was found by Dwayne Schwartzkopf in her home with a rope around her neck. The other end of the rope tied to a doorknob, keeping the victim's head about a foot off the floor. Her death was caused by strangulation by the rope. Gregory Schwartzkopf's broken neck chain was found on a davenport in the living room of the victim's home. Dwayne saw the neck chain on the davenport at the time he discovered the body. The police subsequently recovered it there. Gregory Schwartzkopf's fingerprints were recovered in the victim's home on pieces of wood found on the kitchen floor and in the basement. The basement door was smashed after the murder. On the evening of the murder Gregory told Carol Terry, an acquaintance, that the victim had confided to him that she planned to commit suicide if it proved Dwayne had been unfaithful to her. Gregory told Terry he thought the victim had committed suicide. Katherine Czechanski, the Schwartzkopfs' aunt, testified that Gregory called her from jail a few days after the murder and told her substantially the same version of the events he had told in his confession to the police.

When the admissibility of a confession is challenged, the State has the burden of proving beyond a reasonable doubt, from the totality of the circumstances, that the defendant's confession was made voluntarily and was not induced by violence, threats, promises or other improper influences that overcame the defendant's free will. In reviewing on appeal the sufficiency of evidence on the voluntariness of a confession, this Court will not reweigh the evidence, rather, the decision of the trial court will be affirmed if there is substantial evidence of probative value to support the finding of voluntariness. *Richardson v. State* (1985), Ind., 476 N.E. 2d 497, 500; *Massey v. State* (1985), Ind., 473 N.E.2d 146, 147.

In the instant case, Gregory Schwartzkopf came to the Hammond Police Station pursuant to a telephone request at about 7:45 to 8:00 p.m., on April 6, 1987. Gregory was eighteen (18) years of age at the time. Detective Miles and Detective Vicari spoke to Gregory about some discrepancies in previous statements he had made to them during their initial investigation. They knew at the time the necklace found at the victim's house belonged to Gregory and that his fingerprints had been found in the house as well. In addition, they had already spoken to Steve Stearns and Gregory's teachers. Gregory had previously stated that he sustained numerous scratches on his arms and neck during a fight with Steve Stearns and that he attended his second, third and fourth hour classes on the day of the murder. Stearns denied fighting with Gregory and Gregory's teachers stated he was not present in school that afternoon. The police considered Gregory a prime suspect and surmised what had happened. They believed they had probable cause to arrest him even before speaking with him. They took him in custody to see if he could clear up some of the discrepancies in his previous statement. When he declined to discuss this with the police at that time, they placed him under arrest. Gregory came to the station with his wife and her father, Willard Owen. Police requested Gregory's wife and Owen to remain outside. Detective Miles testified that at approximately 11:40 p.m., on April 6, he and Detective Vicari went to the booking area to tell Gregory he was going to stay there all night and they would speak with him the following morning. According to Detective Vicari, Gregory then asked if he could speak to them at that time. They then took him to the Detective Bureau where they presented him with a *Miranda* form. (*Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.) Gregory was asked whether he could read and write. He responded that he could, and along with the detectives, read a written form of the *Miranda* waiver. Gregory filled in the blanks on the form, indicated he understood the individual advisements on the form, and signed it. He then went through a series of exculpatory versions of his involvement with the murder, each of them changing in some respects, before making an oral confession that was reduced to writing and signed by him.

At the suppression hearing, Gregory claimed he was induced to make the confession by threats of the death penalty unless he confessed. He said he was verbally abused, thrown into a chair, poked in the nose and forced to sit with his bare feet on a cold concrete floor. He claimed he had requested a lawyer but that the interrogation continued after he made the request. He further claimed the detectives told him he could not talk to a lawyer until after he signed the confession. He went on to state that he was not permitted to talk to his wife or her father, that detectives had attempted to talk to his mother and then called to say they did not need to talk to her. The detectives who interrogated Gregory, Vicari in particular, admitted that at times they raised their voices to Gregory but denied touching him, poking at his nose, or making any threats concerning the death penalty. They testified Gregory's shoes were sent to a police laboratory for examination but that during the interrogation he was given newspaper on which to rest his feet so they would not get cold. The police denied that Gregory requested to talk to a lawyer. The testimony was that Gregory was not threatened in any way or forced or induced to make a confession, nor did he request to see a lawyer or to talk with anyone else.

Gregory claimed the trial court should have found that the confession was not voluntarily given because he was only eighteen years of age, had never had experience with the criminal justice system and was nervous and afraid. He further claimed the police deliberately denied him access to adults who could have advised him and the police used the technique of "bad guy-good guy" in a deliberate attempt to elicit a confession. Gregory's claim that the police failed to give the *Miranda* warnings at the start of the first interrogation on April 6 has no merit since he gave no statement at that time. Moreover, the second interrogation, started after 11:00 p.m., was at Gregory's request when the police told him they would not question him until the next morning. He does not deny this. The interrogation lasted for over five hours. Although Gregory claimed he was

not given his *Miranda* rights and did not make any waivers until 5:00 a.m., the police testified this was done at 11:40 p.m. Before he made any statement, he said he understood his rights and was willing to waive them and at no time asked to see a lawyer or anyone else.

Where there are conflicts in the facts and circumstances before the trial judge, it is within his province to resolve these conflicts. *Richardson, supra; Massey, supra.* There was sufficient evidence here for the trial court to determine beyond a reasonable doubt that Gregory Schwartzkopf willingly and voluntarily made his confession to the police and it was not the product of coercion to the extent his will was overborne. Further, any error in receiving a defendant's confession into evidence is rendered harmless where other evidence of the defendant's making another confession to substantially the same facts is properly received in evidence. *Hensley v. State* (1986), Ind., 499 N.E.2d 1125. This Court found in *Hensley* that other family members testified about statements Hensley made during the incident which were the same statements he made in his confession. This Court found that, taken together, the admissible statements Hensley made in the presence of his family and the overwhelming direct evidence of matters not in dispute were the practical equivalent of the substance of the custodial statement. Hensley was not burdened by his custodial statements because the introduction of these statements neither forced him to take the stand to deny the substance of the statements nor constricted defense counsel's choice of trial tactics. *Hensley*, 499 N.E.2d at 1127, citing *Lloyd v. State* (1983), Ind., 448 N.E.2d 1062; *Greer v. State* (1969), 252 Ind. 20, 245 N.E.2d 158. The same is true of the facts and circumstances in the instant case, especially where Gregory, a few days after the murder, told his aunt substantially the same version of events he had related in his confession to the police. Accordingly, we find the trial court did not err in denying

the motion to suppress and permitting the confession into evidence.

The trial court is affirmed.

SHEPARD, C.J., and GIVAN, J., concur.

DeBRULER and DICKSON, JJ., concur in result without separate opinions.