Perry FREY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A04–9101–CR–16.

Court of Appeals of Indiana, Fourth District.

Oct. 31, 1991.

Transfer Denied Jan. 23, 1992.

---

Susan K. Carpenter, Public Defender of Indiana and David P. Freund, Deputy Public Defender, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen. of Indiana and Cynthia L. Ploughe, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Defendant–Appellant Perry Frey (Frey) appeals his conviction of Battery with a Deadly Weapon, a class C felony. IND. CODE 35–42–2–1(3).

We affirm.

Frey presents two restated issues for our review:

 1. whether sufficient evidence existed to support his conviction of battery with a deadly weapon; and

 2. whether the trial court erred in admitting his written statement to the police into evidence.

The evidence most favorable to the verdict reveals on June 16, 1989, Frey shot Charity Kuhn (Kuhn) four times with a pellet rifle. Frey was 18 years old at the time of the offense, and Kuhn was 12. After the weekend, Kuhn's mother reported the incident to the police and took Kuhn to a doctor to treat her wounds.

The State charged Frey with battery. After trial, a jury found Frey guilty of battery with a deadly weapon, a class C felony. He appeals.

Frey admits he committed battery by intentionally touching Kuhn in a rude, insolent, or angry manner. However, he contends the evidence is insufficient to support a class C felony because it did not establish the .177 pellet gun was a deadly weapon.

■ In reviewing a conviction for sufficiency of the evidence, the appellate court looks only to the probative evidence favorable to the verdict and the inferences reasonably drawn therefrom to see whether the evidence to support a finding of guilt beyond a reasonable doubt exists. On appeal the evidence is not reweighed, nor is the credibility of witnesses judged. *Everroad v. State* (1991), Ind., 571 N.E.2d 1240, 1244.

Our statute defining deadly weapon reads in pertinent part:

A weapon, device, ... or other material that in the manner it is used, or could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury.

IC 35–41–1–8. Bodily injury means impairment of physical condition, including physical pain. IC 35–41–1–4.

■ Our supreme court has employed the "usage test" to determine whether an item is a deadly weapon. The test concentrates, not on the originally-intended use of the object, but on the manner in which it was used during the crime. *Rogers v. State* (1989), Ind., 537 N.E.2d 481, 484, *reh. denied*. Whether sufficient evidence exists to establish a weapon is deadly is determined by looking to whether the weapon had the actual ability to inflict serious injury under the fact situation and whether the defendant had the apparent ability to injure the victim seriously through use of the object during the crime. *Id.*, at 485.

Consequently, using this test, Indiana courts have determined a screwdriver, a crowbar in a towel, a piece of asphalt, and a gun which shoots only blanks to be deadly weapons. *Lamb v. State* (1984), Ind.,

462 N.E.2d 1025; *Hatton v. State* (1982), Ind., 439 N.E.2d 565; *Majors v. State* (1980), Ind., 274 Ind. 261, 410 N.E.2d 1196; *Barber v. State* (1981), Ind.App., 418 N.E.2d 563.

Several Indiana courts have held pellet or BB guns are deadly weapons within the meaning of IC 35–42–5–1. *Clark v. State* (1986), Ind., 498 N.E.2d 918 (abrogated on other grounds 110 S.Ct. 2301); *Glover v. State* (1982), Ind., 441 N.E.2d 1360, 1362; *Williams v. State* (1983), Ind.App., 451 N.E.2d 687. Although violent crime cases, none of the weapons was fired. The court determined in each the gun was a deadly weapon because of the actual ability of the gun to function as a weapon capable of inflicting serious bodily injury under the factual circumstances presented. Therefore, the victim need not sustain serious bodily injury before an object may be deemed to be a deadly weapon.

■ When differing conclusions may be reached as the weapon's deadly propensities, it is a question of fact for the jury to determine from a description of the weapon, the manner of its use, and the circumstances of the case. *Rogers, supra*, at 485.

In the instant case, the evidence showed Frey used the gun in order to commit the battery. While Kuhn was visiting at a mutual friend's house, Frey pointed the pellet gun at Kuhn's eight-year-old brother. When Kuhn intervened on her brother's behalf, Frey shot her in the shin. (R. 147). Then as she was sitting down, he shot her in the calf. (R. 148). Later while Kuhn was attempting to go home, Frey shot her again in the upper thigh. As she was leaving, he shot her a fourth time in the buttocks. (R. 150). He then began to chase and threaten Kuhn. (R. 151). Once Kuhn reached home, her mother locked the door and told Frey to leave. (R. 134).

■ The record also reveals a police officer testified this type of gun could be used in killing small game or target shooting. (R. 202). A physician testified that if the gun is discharged at short range at the face, it could cause blindness or impairment of vision. (R. 216). The physician

also testified Kuhn's wounds were painful and would probably scar. (R. 214)

From the evidence presented, the jury was warranted in inferring the gun is inherently a weapon and could actually injure a person seriously. Also it was reasonable for the jury to conclude Frey by intentionally aiming at the Kuhn four separate times could have seriously injured her. Therefore, substantial evidence of probative value exists from which the jury could reasonably determine the pellet rifle was a deadly weapon.

Next, Frey contends the trial court erred in admitting, over objection, a written statement Frey gave to Nappanee Police Chief John Elliott (Elliott). We disagree.

▋ Before an incriminating statement made in response to a custodial interrogation can be properly admitted into evidence, the State must prove beyond a reasonable doubt the defendant was effectively apprised of his Fifth Amendment right not to incriminate himself and his Sixth Amendment right to have an attorney present. Furthermore, the State must prove the defendant knowingly and voluntarily waived these rights. *Miranda v. State of Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, *reh. denied*, 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121; *Baughman v. State* (1988), Ind., 528 N.E.2d 78, 80. There is a presumption the defendant did not waive his rights. *Tague v. Louisiana* (1980), 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622; *Light v. State* (1989), Ind., 547 N.E.2d 1073, 1079–80, *trans. denied*. A signed waiver form is not dispositive of the question, and the express written or oral waiver of rights is not required to establish a valid waiver. *Baughman,* supra, at 80; *Brock v. State* (1989), Ind., 540 N.E.2d 1236, *reh. denied*. A reviewing court considers all of the evidence in the record which supports the trial court's ruling. It does not reweigh the evidence. *Green v. State* (1991), Ind.App., 575 N.E.2d 296, 301.

▋ Although Frey's statement is not incriminating, it is subject to the same constitutional rights as a confession. In it,

Frey asserts Kuhn was accidentally injured when a projectile ricocheted off the garage wall. (R. 249). Later in the house, he believed the gun to be empty when he pointed it at Kuhn. He also posits another teenager shot Kuhn on the same day. (R. 249).

▋ Elliott testified he had advised Frey of his *Miranda* rights and Frey had voluntarily and knowingly waived them. (R. 242). However, Elliott was unable to produce a properly dated waiver. Elliott indicated part of his certainty concerning the advisement of rights rested on his twelve-year routine as a police officer. Relying on this comment, Frey claims Elliott's testimony was not based on actual memory. A careful reading of the record reveals Elliott unequivocally stated he had informed Frey of his rights and Frey had waived his rights before giving the statement.

Even in the absence of a signed waiver, a reasonable trier of fact could conclude beyond a reasonable doubt Frey was advised of his *Miranda* rights. It is also logical to infer to the same degree of certainty that Frey voluntarily and knowingly waived of those rights before he gave his statement.

▋ Even assuming the State did not meet its burden, any error would be harmless because other admissible evidence was received which stated the same facts. When constitutional error occurs, we may affirm the conviction when the error is harmless beyond a reasonable doubt. The evidence which should have been excluded must make no contribution to the verdict. *Hewell v. State* (1984), Ind.App., 471 N.E.2d 1235, 1239, *reh. denied, trans. denied;* Trial Rule 61. Any error in receiving the defendant's confession is rendered harmless where other admissible evidence proves substantially the same facts as the disputed confession. *Schwartzkopf v. State* (1989), Ind., 539 N.E.2d 953, 955 (defendant told his aunt the same version of events he had related in his confession to police).

Here, Frey's cousin, Harold Miller, testified Frey told him essentially the same version of the facts as Frey furnished in his written statement. (R. 228). Conse-

quently, if the statement was erroneously admitted, such an admission did not contribute to the verdict. The trial court did not err in admitting Frey's written statement.

Affirmed.

CHEZEM and GARRARD, JJ., concur.