**Guillermo VELA, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0407–CR–551.**

Court of Appeals of Indiana.

Aug. 12, 2005.

---

Victoria Ursulskis, Marion County Public Defender Agency, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

MAY, Judge.

Guillermo Vela appeals his convictions after a bench trial of aggravated battery, a Class B felony,[1] and criminal confinement, a Class B felony.[2] He raises three issues, which we consolidate[3] and restate as:

1.  Whether he was sentenced correctly in light of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied* 542 U.S. 961, 125 S.Ct. 21, 159 L.Ed.2d 851 (2004); and

2.  Whether his guilty verdicts were so contradictory and irreconcilable with those of his two co-defendants that his convictions must be corrected.

We affirm in part, vacate in part, and remand.

### FACTS AND PROCEDURAL HISTORY

On New Year's Eve of 2001, Vela was celebrating at a friend's house. After midnight he left for an apartment complex to pick up some girls he planned to bring to the party. While Vela was at the apartment complex, Matt Thompson hit the driver's side window of Vela's automobile with a cane. Gary Sheets was with Thompson.

Vela returned to his friend's house and told the group what had happened. He said he wanted to return to the apartments where he had encountered Sheets and Thompson and "kick their ass." (Tr. at 53.) William Woods grabbed an unloaded shotgun, and then he and Michael Williams left with Vela. Woods, Williams and Vela drove to a Village Pantry, where they encountered Joseph Sweat and Craig Smith. Williams told Sweat and Smith what had happened to Vela.

Woods, Williams, Vela, Sweat and Smith then drove to the apartment complex. They approached Thompson and Sheets, with Woods carrying the shotgun. Sweat grabbed Thompson and slammed him to the ground. Woods watched Vela kick Thompson in the head four or five times.

---

1.  Ind.Code § 35–42–2–1.5.

2.  Ind.Code § 35–42–3–3.

3.  Vela argues his convictions of aggravated battery and criminal confinement subjected him to double jeopardy because his confinement of a victim occurred only during the battery of the same victim. The State acknowledges the same acts may have been used to establish both crimes. We accordingly vacate on double jeopardy grounds Vela's conviction of criminal confinement. *See Miller v. State,* 790 N.E.2d 437, 439 (Ind.2003) (two or more offenses are the "same offense" in violation of the Indiana Constitution's double jeopardy prohibition if, with respect to the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense).

Sweat kicked Thompson in the head once. After Woods stepped between Vela and Thompson, the altercation ended. Woods, Williams, Vela, Sweat and Smith returned to Woods' house, where Vela claimed he had put a gun to Thompson's mouth.

Thompson was taken to Wishard Hospital unconscious and in critical condition. He suffered multiple fractures of his face and skull and injury to his brain.

Vela was charged with aggravated battery and two counts of criminal confinement. The judge found Vela guilty of aggravated battery and the confinement of Thompson, but not guilty of confining Sheets. At sentencing, the trial court found two aggravating circumstances: the nature and circumstances of the crime, and Vela's violation of his pretrial release conditions. It found three mitigating circumstances: Vela had no criminal history, he showed remorse, and long-term incarceration would be a hardship on Vela's dependent. It found the aggravating circumstances outweighed the mitigating circumstances, and sentenced Vela to twelve years on each count, to be served concurrently.

## DISCUSSION AND DECISION

### 1. Sentencing

We reviewed our trial courts' sentencing decisions for an abuse of discretion. See, e.g., Bocko v. State, 769 N.E.2d 658, 667 (Ind.Ct.App.2002), reh'g denied, trans. denied 783 N.E.2d 702 (Ind.2002). If a trial court used aggravating or mitigating circumstances to modify the presumptive sentence, all we required the trial court to do was: (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's

evaluation and balancing of the circumstances. See id. However, in Blakely, the Supreme Court held the Sixth Amendment requires a jury to determine beyond a reasonable doubt the existence of aggravating factors used to increase a sentence above the presumptive sentence assigned by the legislature. 542 U.S. at ——, 124 S.Ct. at 2536.

In Smylie v. State, 823 N.E.2d 679 (Ind.2005), petition for cert. filed, our supreme court held Blakely applies to Indiana's sentencing scheme, and thus requires "the sort of facts envisioned by Blakely as necessitating a jury finding must be found by a jury under Indiana's existing sentencing laws." Id. at 686. However, Blakely does not require a jury find every fact used to enhance a sentence beyond the statutory maximum. There are at least four ways such facts may properly be found and used by a court to enhance a sentence. An aggravating circumstance is proper under Blakely when it is: 1) a fact of prior conviction; 2) found by a jury beyond a reasonable doubt; 3) admitted or stipulated by a defendant; or 4) found by a judge after the defendant consents to judicial fact-finding. Trusley v. State, 829 N.E.2d 923, 925 (Ind.2005).

At the sentencing hearing, the trial court asked Vela whether the information contained in Vela's pre-sentence investigation was true. Vela agreed it was, and he offered no changes or corrections to the report. The report included the charging informations with the affidavit for probable cause attached. Vela's two aggravating circumstances were the nature and circumstances of the crime and his violation of pre-trial release orders.[4]

Although this specific question has not been addressed, we hold Vela's ac-

4. Vela apparently tested positive once for marijuana and once for cocaine.

knowledgement the pre-sentence report was correct is not, without more, an admission sufficient to support an aggravator based on the nature and circumstances of the crime.

In *McGinity v. State*, 824 N.E.2d 784, 788 (Ind.Ct.App.2005), *trans. denied*, we determined McGinity admitted the nature and circumstances of the crime when he testified to those facts at the sentencing hearing. Vela admitted he was sorry about what had happened, but he did not refer to specific facts regarding the circumstances of his crime. As a result, the enhancement of his sentence based on the nature and circumstances of the crime ran afoul of *Blakely*.

■ Nor did Vela admit the second aggravating circumstance, his poor performance in the pre-trial release program. As such, it too violates *Blakely*.

There were three mitigating circumstances: Vela had no criminal history, he expressed remorse, and long-term incarceration would be a hardship on his dependent. These are all valid mitigating factors, with his lack of a prior criminal history being a strong mitigating circumstance. *See Sipple v. State*, 788 N.E.2d 473, 482–83 (Ind.Ct.App.2003) (trial court must consider a defendant's criminal record during sentencing, and the absence of a criminal record is usually a factor entitled to substantial mitigating weight).

Absent a valid aggravator, we may not affirm Vela's enhanced sentence. We accordingly must remand to the trial court with instructions to afford the State an election to prove additional aggravating circumstances to a jury. Should the State decline to so elect, we direct the trial court to reconsider Vela's sentence in light of the three mitigators identified above.

### 3. *Inconsistent Verdicts*

Vela, Sweat and Smith were tried together, and Vela asserts the various verdicts were "legally and logically inconsistent" (Br. of Appellant at 24) because Vela was convicted of aggravated battery and criminal confinement while Sweat was convicted of a lesser charge of battery and Smith's charges were dismissed. Essentially, Vela appears to argue he should have been found guilty of, at most, battery as a Class C felony, as was his co-defendant Sweat.

■ It is not improper for one co-defendant who is charged with a joint crime to have been the only one convicted of that crime. *Poling v. State*, 740 N.E.2d 872, 881–82 (Ind.Ct.App.2000), *disapproved on other grounds by Graves v. State*, 823 N.E.2d 1193 (Ind.2005). Ordinarily, where a defendant is acquitted of some charges and convicted of others, the results will survive a claim of inconsistency where the convictions are supported by sufficient evidence. *Spann v. State*, 632 N.E.2d 741, 744 (Ind.Ct.App.1994); *and see United States v. Hare*, 153 F.2d 816, 819 (7th Cir.1946) (the fact a jury finds one party not guilty does not militate against a verdict of guilty as to a codefendant; "the determinative query is over the sufficiency of the evidence to support the verdict of guilt as to the codefendants who are appealing. We look to the evidence to determine the guilt of an accused person, not to the verdict as to guilt of another defendant."), *cert. denied* 328 U.S. 836 (1946). A court reviewing a claim of inconsistent verdicts will not engage in speculation about the thought processes or motivation for reaching a particular verdict. *Hodge v. State*, 688 N.E.2d 1246, 1249 (Ind.1997).

■ Woods testified he saw Vela kick Thompson in the head four or five times, but that Sweat kicked Thompson only once. No one else saw anyone other than

Vela and Sweat strike Thompson. Given the severity of Thompson's injuries—multiple fractures to the skull—we cannot say the trial court's verdict as to Vela was unsupported by the evidence.

Affirmed in part, vacated in part, and remanded.

SHARPNACK, J., and VAIDIK, J., concur.