Thomas DAVIS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintff.

No. 30A01–0502–CR–94.

Court of Appeals of Indiana.

Oct. 26, 2005.

Transfer Denied Jan. 4, 2006.

Kimberly S. Robinson, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Depu-

ty Attorney General, Indianapolis, for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Thomas Davis appeals his convictions and sentence for class B felony robbery and class D felony resisting law enforcement. We affirm.

### Issues

Davis raises six issues, which we consolidate and restate as follows:

I. Whether the trial court committed fundamental error when it failed to instruct the jury on the elements of resisting law enforcement;

II. Whether sufficient evidence supports his convictions;

III. Whether the trial court abused its discretion by refusing Davis's tendered jury instruction on the factors used to determine whether an unloaded weapon is deadly or capable of causing serious bodily injury;

IV. Whether his enhanced sentence violates his Sixth Amendment rights; and

V. Whether the trial court abused its discretion by failing to find mitigating circumstances.

### Facts and Procedural History

On April 3, 2004, at approximately 11:00 a.m., Adrianne Brasher drove Davis and Andre Bacon to a Bank One branch at Green Meadows Shopping Center in Greenfield, Indiana, in order to rob it. All three wore blue jumpsuits specifically purchased for the robbery. When they arrived at the bank, Davis told Brasher to wait in the car with the engine running.

Davis and Bacon each put on a ski mask and entered the bank. Davis and Bacon were armed with $BB/CO_2$ guns that were neither loaded nor equipped with $CO_2$ cartridges, and each carried a blue bag to hold the money.

Approximately eleven customers, three tellers, and one branch manager were present when Davis and Bacon entered the bank. Either Davis or Bacon told everyone to "be calm and stay cool." Tr. at 156. One of them pushed a customer away from one teller's window and demanded that the teller give him all her money. The other approached a teller at a closed window with his gun pointed at her. He threw a dark blue bag over the window and told her to put all her money into the bag. Another teller thought that the gun held by one of the robbers was a "Glock" handgun. *Id.* at 156. All the tellers were afraid and believed that the robbers were armed with real guns. One teller repeatedly stated, "you're scaring me." *Id.* at 181. She was so terrified by the robbery that she quit her job as a bank teller later that day. Neither Davis nor Bacon informed anyone in the bank that they were carrying unloaded $BB/CO_2$ guns.

The two tellers that had been directed by Davis and Bacon to put their money in the blue bags did so. Each teller also placed a red dye pack into a blue bag. Davis and Bacon were in the bank branch approximately five minutes and left with over $10,000. They returned to the car Brasher was driving. Davis got into the back seat while Bacon got into the front seat. Brasher drove away from the bank.

One of the Bank One customers, who was leaving the bank as Davis and Bacon were entering it, saw what he believed to be a real handgun and heard one of them say, "this is a stickup." *Id.* at 216. The customer drove to a nearby restaurant so that his girlfriend could call the police.

He stayed in his car and saw the robbers leave the bank and get into a green Pontiac Grand Prix with a Tennessee license plate. He followed the Pontiac to a stoplight, where he saw someone in the car throw out a blue bag with a red substance on it. He continued to follow the vehicle until it was about to enter Interstate 70, where he was able to flag down Greenfield Police Sergeant Terry Austin.

Sergeant Austin spotted the vehicle on Interstate 70 and activated his lights and siren. At least four more police cars with their emergency lights and sirens activated caught up to the vehicle. Brasher repeatedly told Davis that she wanted to stop, but he told her not to stop. *Id.* at 324. After being pursued for approximately eight miles, Brasher finally stopped the vehicle after it ran over a stop stick that deflated two tires. After the vehicle stopped and the suspects were secured, Sergeant Austin searched the vehicle. He saw what he believed was a semi-automatic Beretta handgun on the front floorboard. He also found a large amount of red-stained money in the back seat.

On April 5, 2004, the State charged Davis with class B felony robbery, class D felony resisting law enforcement, and class D felony auto theft. On November 15, 2004, the State filed an amended information for each charge to clarify the factual allegations. On December 7, 2004, a jury trial began. At the close of the State's evidence, the State moved to dismiss the amended auto theft charge, which the trial court granted. On December 9, 2004, the jury convicted Davis of the remaining charges. On January 14, 2005, the trial court sentenced Davis to a twenty-year term for the robbery conviction and a three-year term for the resisting law enforcement conviction, to be served concurrently. Davis appeals.

### Discussion and Decision

#### I. Failure to Instruct Jury on Elements of Resisting Law Enforcement

■ Davis contends that the trial court committed fundamental error by failing to instruct the jury on the elements of resisting law enforcement.[1] The elements of resisting law enforcement are set forth in Indiana Code Section 35–44–3–3, which provides in relevant part that a person who knowingly or intentionally flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop, commits resisting law enforcement, a class D felony if the person uses a vehicle to commit the offense.

■ Fundamental error is error that represents a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. *Carter v. State,* 738 N.E.2d 665, 677 (Ind. 2000). The error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* In determining whether a claimed error denies the defendant a fair trial, we consider whether the resulting harm or potential for harm is substantial. *Townsend v. State,* 632 N.E.2d 727, 730 (Ind.1994). The element of harm is not shown by the fact that a defendant was ultimately convicted. *Id.* Rather, it depends upon whether the defendant's right to a fair trial was detrimen-

---

1. Davis frames his argument in terms of fundamental error, apparently conceding that he waived this claim by failing to tender an instruction on the elements of resisting law enforcement. *See Williams v. State,* 771 N.E.2d 70, 72 (Ind.2002) ("A defendant who fails to object to the court's final instructions and fails to tender a set of instructions at trial waives a claim of error on appeal.").

tally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. *Id.* In determining whether fundamental error occurred in the giving of instructions, we consider all the relevant information provided to the jury including that in closing arguments and other instructions. *Boesch v. State,* 778 N.E.2d 1276, 1279 (Ind.2002). There is no due process violation where all such information, considered as a whole, does not mislead the jury as to a correct understanding of the law. *Id.*

To support his argument that the trial court committed fundamental error, Davis relies on *Lacy v. State,* 438 N.E.2d 968 (Ind.1982), asserting that it held that a total failure to instruct the jury detailing the elements of a criminal offense warrants reversal. *See id.* at 970 ("[W]e have no doubt a total failure to give an instruction detailing the elements of the offense would be available as reversible error on appeal absent compliance with the contemporaneous objection requirement."). We disagree that this is *Lacy*'s holding. The statement Davis relies on is arguably dictum, inasmuch as there was no reason for the *Lacy* court even to consider whether fundamental error occurred because it concluded that the elements of the crime were given as preliminary instructions, and therefore, the trial court had not commit-

ted error. *Id.; see also Elliott v. State,* 450 N.E.2d 1058, 1063 (Ind.Ct.App.1983) (concluding that the *Lacy* statement discussed above is arguably dictum). Therefore, *Lacy* is not dispositive here.

The dissent argues that *Lacy* should control and notes that the *Lacy* court quoted *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), to support the statement that Davis relies upon.[2] The language from *Screws* is powerful indeed; however, it must be understood in context. In *Screws,* the defendants, a sheriff and police officer, were convicted for "willfully" depriving the victim of his civil rights while acting under color of the law pursuant to Section 20, 18 U.S.C. Section 52 (1940) for beating the victim to death after arresting him.[3] *Id.* at 93–94, 65 S.Ct. 1031. The defendants challenged the constitutionality of Section 20 arguing that it contained no ascertainable standard of guilt in violation of the Fourteenth Amendment. *Id.* at 94, 65 S.Ct. 1031. The constitutionality of the statute turned upon the level of intent that should be ascribed to "willfully." *Id.* at 101, 65 S.Ct. 1031. The Supreme Court concluded that "willful" must be interpreted to mean more than mere bad purpose or evil intent but rather the specific intent to deprive a person of a federal right. *Id.* at 103, 65 S.Ct. 1031. This interpretation of "willful"

---

**2.** The *Lacy* court quoted the following passage: "[W]here the error is so fundamental as to not submit to the jury the essential ingredients of the only offense on which the conviction could rest, we think it necessary to take note of it on our own motion. Even those guilty of the most henious offenses are entitled to a fair trial. Whatever the degree of guilt, those charged with a federal crime are entitled to be tried by the standards of guilt which Congress has prescribed." *Screws,* 325 U.S. at 107, 65 S.Ct. 1031.

**3.** Section 20 provided, "Whoever, under color of any law, statute, ordinance, regulation, or

custom, will-fully subjects, or causes to be subjected, any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution and laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000, or imprisoned not more than one year; or both." *Screws,* 325 U.S. at 93, 65 S.Ct. 1031.

would allow the statute to withstand a charge of unconstitutional vagueness. *Id.*

The Supreme Court then noted that the level of intent was not submitted to the jury with the proper instructions. *Id.* at 106–07, 65 S.Ct. 1031. The trial court had instructed the jury that the defendants had "acted illegally if they applied more force than was necessary to make the arrest effectual or to protect themselves from the prisoner's alleged assault." *Id.* The Supreme Court held that the trial court should have instructed the jury that "[t]o convict it was necessary for them to find that petitioners [defendants] had the purpose to deprive the prisoner of a constitutional right, e.g. the right to be tried by a court rather than by ordeal." *Id.* at 107, 65 S.Ct. 1031. Therefore, the trial court's jury instruction was actually a misstatement of the element of intent and entirely changed the character of the offense. Read in this light, the passage in *Screws* relied on in *Lacy* is arguably overbroad inasmuch as *Screws* actually dealt with an incorrect instruction which misled the jury. *See Elliott,* 450 N.E.2d at 1064 (concluding that the *Screws'* passage quoted in *Lacy* is overbroad.) In the case at bar, there was not an incorrect instruction given that changed the character of the offense and misled the jury. Consequently, we conclude that the passage from *Screws* quoted by the *Lacy* court should not control this case.

■ In addition, Indiana courts have concluded that an omission in jury instructions did not constitute fundamental error. In *Elliott,* the defendant was charged with involuntary manslaughter, but the jury instructions did not include an instruction on proximate cause. 450 N.E.2d at 1063. The *Elliott* court declined to find that the omission constituted fundamental error because there was no question that the victim died as a result of the battery, and

therefore, no prejudice had resulted from the omission. *Id.* at 1064–65. In reaching this conclusion, the *Elliott* court relied upon several federal circuit court cases as well as an early Indiana supreme court case. *Id.; see United States v. Park,* 421 U.S. 658, 673–74, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975) (stating that failure to instruct jury that defendant had the responsibility and authority to prevent or correct violation and failed to do so was not an abuse of discretion where jury could not have failed to be aware, based on the instructions as a whole and in context of the trial, that defendant's responsibility, and not his position, was at issue); *see also Rokvic v. State,* 194 Ind. 450, 457–58, 143 N.E. 357, 359 (1924) (stating that omission of instruction that vehicle must be taken without owner's consent was not prejudicial to defendant where undisputed evidence established that stolen vehicle had been taken without owner's consent); *see also Stafford v. State,* 736 N.E.2d 326, 332 (Ind.Ct.App. 2000) (concluding that trial court's failure to specifically instruct jury that State was required to prove confinement without consent was not fundamental error, where instructions together as a whole adequately informed jury that victim must not consent to confinement), *trans. denied.* We conclude that justice can be best served by analyzing questions involving jury instructions based on the circumstances of each case to determine whether the defendant received a fair trial rather than summarily concluding that any omission is fundamental error.

■ Having determined that *Lacy* and *Screws* should not control here, we turn to our analysis of whether the failure to instruct the jury on the elements of resisting law enforcement deprived Davis of a fair trial, mindful of our duty to consider all the relevant information provided to the jury. *See Boesch,* 778 N.E.2d at 1276: The

record reveals that the trial court read the charging information to the jury during both preliminary and final instructions:

Information For Fleeing Law Enforcement by Vehicle, Laura L. Clark, being sworn on her oath, says that *Thomas A. Davis, III* on the 3rd day of April, 2004, at said County of Hancock and State of Indiana, *did then and there knowingly or intentionally flee from law enforcement officer,* to-wit: Officer Terry Austin and/or Deputy Bridget Foy *in a vehicle,* to-wit: a 1993 Pontiac Grand Prix *after the officers had by visible or audible means,* to-wit: activated emergency lights and siren, *identify* [sic] *themselves as officers and ordered the person to stop,* all contrary to the form of the statute I.C. 35–44–3–3 and against the peace and dignity of the State of Indiana.

Tr. at 121, 441 (emphases added). We note that the charging information substantially mirrors the language of Indiana Code Section 35–44–3–3 and that the jury heard it twice. In addition, the prosecuting attorney presented the elements of resisting law enforcement to the jury during closing arguments: "You will be informed that to find the Defendant guilty you must find that the Defendant *knowingly or intentionally fled from a law enforcement officer after law enforcement officer had identified themselves* [sic] *through audible or verbal or from sight means in a vehicle* in order for you to find the Defendant guilty." *Id.* at 416 (emphasis added). *See Isom v. State,* 651 N.E.2d 1151, 1153 (Ind.1995) (noting that, during closing arguments, the prosecuting attorney had correctly stated that sudden heat was a mitigating factor that reduces what would otherwise be murder to voluntary manslaughter in reaching conclusion that erroneous instruction stating that sudden heat was an essential element of voluntary manslaughter did not mislead the jury, and

therefore, did not constitute fundamental error). Based on all the information that was provided to the jury, we cannot conclude that the trial court's failure to read separately the elements of resisting law enforcement misled the jury as to the correct understanding of the law. Nor has Davis demonstrated that such failure so prejudiced his rights as to make a fair trial impossible. Davis is entitled to a fair trial, not a perfect trial. *See Elliott,* 450 N.E.2d at 1066.

■ Davis also complains that the charging information did not contain the State's burden of proof, but that was covered in other jury instructions as well:

Under the law of this State a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence the State must prove the defendant guilty of each essential element of the crimes charged beyond a reasonable doubt. The defendant is not required to present any evidence to prove his innocence, or to prove or explain anything. The State has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases the State's proof must be more powerful than that. It must be beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty and in criminal cases the law does not require proof that overcomes every possible doubt. If, based upon your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged you should find him guilty. If on the other hand you think

there is a real possibility that he is not guilty, you should give him the benefit of the doubt and find him not guilty.

*Id.* at 122–23, 441. Accordingly, we conclude that the trial court did not commit fundamental error in failing to include an instruction on the elements of resisting law enforcement.

## II. Sufficiency of the Evidence

### A. Resisting Law Enforcement

 Davis argues that the evidence was insufficient to support his conviction for resisting law enforcement. In reviewing sufficiency of the evidence, we will affirm a conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, and without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Hawkins v. State,* 794 N.E.2d 1158, 1164 (Ind.Ct.App. 2003). To convict Davis of class D felony resisting law enforcement, the State had the burden of proving beyond a reasonable doubt that Davis, using a vehicle, fled from a law enforcement officer after the officer had, by visible or audible means, identified himself and ordered him to stop. Ind. Code § 35–44–3–3. Davis claims that he was merely a passenger of the vehicle and that Brasher, as the driver, had exclusive control of the vehicle. The State asserts that the statute requires only that a person "use," not "drive," a vehicle to flee from law enforcement. We agree with the State.

 "Where two people act in concert to commit a crime, each may be charged as a principal in all acts committed by the accomplice in the accomplishment of the crime." *Floyd v. State,* 503 N.E.2d 390, 392 (Ind.1987). "[I]t is not necessary that the State prove the defendant personally committed every act constituting the perpetration of an offense [because one] who aids another to commit a criminal offense can be charged with that offense and tried and convicted as a principal." *Bean v. State,* 460 N.E.2d 936, 942 (Ind.1984). A person who aids another person to commit a crime is as guilty of the principal offense as the actual perpetrator. *Farris v. State,* 753 N.E.2d 641, 648 (Ind.2001).

Here, Davis and Brasher planned to rob the bank; Brasher drove Davis to the Bank specifically to carry out their plan of robbery; Davis told Brasher to wait while he and Bacon went into the bank; and Brasher drove them away from the bank. The acts of Brasher of fleeing the police are imputed to Davis. *See Smith v. State,* 809 N.E.2d 938, 945 (Ind.Ct.App.2004) (holding that evidence was sufficient to support defendant's conviction for resisting law enforcement where defendant was a passenger in vehicle that fled from police). In addition, while they were being pursued by the police, Davis told Brasher not to stop, which demonstrates his participation in the fleeing.[4] *See id.* We conclude that there was sufficient evidence to support Davis's conviction for class D felony resisting law enforcement.

### B. Robbery

 Davis also argues that there is insufficient evidence to support his conviction for class B felony robbery. To convict

4. Davis contends that he never threatened to harm Brasher if she stopped the vehicle and that the reason she did not stop is that she was simply scared. This contention is merely an invitation to reweigh the evidence, which we must decline. In addition, because the evidence was sufficient to convict Davis as a principal, we need not address Davis's argument that the jury was not instructed that it could convict Davis as an accomplice pursuant to Indiana Code Section 35–41–2–4.

Davis, the State had to prove beyond a reasonable doubt that Davis, while armed with a deadly weapon, knowingly or intentionally took property from the presence of another person (1) by using or threatening the use of force on any person or (2) by putting any person in fear. Ind.Code § 35–42–5–1.

Davis argues that the State failed to establish that the unloaded BB/$CO_2$ gun with which he was armed was a deadly weapon. Indiana Code Section 35–41–1–8 defines "deadly weapon," in relevant part, as a loaded or unloaded firearm, or as a destructive device, weapon, device, taser, or electronic stun weapon, equipment, chemical substance, or other material that in the manner it is used, or could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury. "Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss, impairment of the function of a bodily member or organ, or loss of a fetus." Ind. Code § 35–41–1–25.

 Although not firearms, pellet or BB guns can be considered deadly weapons. *Merriweather v. State*, 778 N.E.2d 449, 457 (Ind.Ct.App.2002). Whether a weapon is a deadly weapon is determined from a description of the weapon, the manner of its use, and the circumstances of the case. *Id.* "The fact finder may look to whether the weapon had the actual ability to inflict serious injury under the fact situation and whether the defendant had the apparent ability to injure the victim seriously through use of the object during the crime." *Id.*

We have previously held that disabled or inoperable pellet guns are deadly weapons within the meaning of Indiana Code Sections 35–42–5–1 and 35–41–1–8. *Id.* at

458; *see also Whitfield v. State*, 699 N.E.2d 666, 670 (Ind.Ct.App.1998), *trans. denied.* In *Merriweather*, the defendant held the victim at gunpoint while she emptied the cash drawer. 778 N.E.2d at 458. The victim testified that she was afraid and initially believed that the gun was real. *Id.* A panel of this Court concluded that the inoperable pellet gun had the apparent ability to cause serious bodily injury and was used in a threatening manner, thereby inducing fear in the victim. *Id.* Likewise, in *Whitfield*, the defendant stuck a disabled pellet gun in the victim's face and demanded money, frightening the victim so much that he was hardly able to speak. 699 N.E.2d at 670. In addition, the evidence established that the pellet gun was virtually indistinguishable from the real gun on which it was modeled. *Id.*

*Merriweather* and *Whitfield* are dispositive here. The evidence establishes that the tellers believed that Davis and Bacon were armed with real guns. At least one customer testified that he believed the guns were real. Police officers also initially mistook the BB/$CO_2$ gun for a real handgun. Tr. at 257, 402. In addition, Davis and Bacon used the guns in a threatening manner that frightened the tellers. A teller testified that one of the robbers approached her with a gun pointed at her. All the tellers testified that they were afraid. One teller repeatedly stated, "you're scaring me." *Id.* at 181. That teller was so frightened that she quit her job later that day. Clearly, Davis and Bacon used BB/$CO_2$ guns to rob the bank because they knew that people would believe they were real guns and would be sufficiently frightened to cooperate. Lastly, the evidence demonstrates that BB guns are readily capable of causing serious bodily injury. A Greenfield Police Department detective testified that BBs and pellets have been imbedded in the skin and

have caused loss of eyesight. *Id.* at 400–01. BB guns weigh approximately the same as real guns and may be used to bludgeon someone. *Id.* at 403. In addition, the BB/CO$_2$ gun used here contained the inscribed warning, "Warning, mis use [sic] or careless use may cause serious injury or death." *Id.* at 367; State's Ex. 9. We conclude that the BB/CO$_2$ gun used by Davis were readily capable of causing serious bodily injury and were used in a threatening manner causing the victims to experience substantial fear. Therefore, the evidence is sufficient to support Davis's conviction for class B felony robbery.[5]

### III. Refusal of Jury Instruction

 Davis contends that the trial court erred by refusing his tendered jury instruction on the factors used to determine whether an unloaded weapon is deadly or capable of causing serious bodily injury. "Instructing the jury lies solely within the discretion of the trial court, and we will reverse only upon an abuse of that discretion." *Schmid v. State,* 804 N.E.2d 174, 182 (Ind.Ct.App.2004), *trans. denied.* In determining whether the trial court properly refused a tendered instruction, we consider three factors: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other

instructions. *Id.* A defendant is entitled to have the jury instructed correctly on an essential rule of law. *McCarthy v. State,* 751 N.E.2d 753, 755 (Ind.Ct.App.2001), *trans. denied.* However, before a defendant is entitled to a reversal, he must affirmatively demonstrate that the instructional error prejudiced his substantial rights. *Howard v. State,* 816 N.E.2d 948, 962 (Ind.Ct.App.2004). Jury instructions are to be considered as a whole, and we will not find that the trial court abused its discretion unless we determine that the instructions taken as a whole misstate the law or otherwise mislead the jury. *Schmid,* 804 N.E.2d at 182.

 Initially, we note that Davis failed to cite any authority to support his assertion that his tendered jury instruction is a correct statement of the law. A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record. *Smith v. State,* 822 N.E.2d 193, 202–03 (Ind.Ct.App.2005), *trans. denied; see also* Ind. Appellate Rule 46(A)(8) (requiring that contentions in appellant's brief be supported by cogent reasoning and citations to authorities, statutes, and the appendix or parts of the record on appeal). Therefore, Davis has waived this claim by failing to provide adequate citation to authority.

5. The dissent disagrees that the victims' fear and belief that the guns were real should be relevant considerations in assessing whether an item is a deadly weapon. Our analysis is firmly based on those of *Merriweather,* 778 N.E.2d 449, and *Whitfield,* 699 N.E.2d 666, the only other Indiana cases in which BB or pellet guns that were incapable of actually shooting ammunition during the commission of the crime were found to be deadly weapons. In fact, *Whitfield* relied upon our supreme court's analysis in *Rogers v. State,* 537 N.E.2d 481, 485 (Ind.1989), in which the court stated that, "[t]he realism of the weapon coupled with the appellant's threatening behavior caused the victims to fear for their lives" in reaching the conclusion that a disabled pistol was a deadly weapon within the meaning of Indiana Code Section 35–42–5–1. To the extent that the dissent is concerned that considering the victim's fear and belief that an item is a real gun would lead to the conclusion that a finger or a stick of butter are deadly weapons, we note that these factors are *not the sole factors* used to make such a determination.

■ Waiver notwithstanding, Davis's claim fails. Davis tendered the following instruction:

> Whether sufficient evidence exists to establish an unloaded weapon is deadly is determined by:
>
> (1) looking to whether the weapon had actual ability to inflict serious injury under the fact situation; and
>
> (2) whether the accused had apparent ability to injure someone seriously through use of the weapon during the commission of the crime.

Appellant's App. at 42. The trial court properly refused Davis's instruction because the substance of the instruction was covered by other instructions given. The trial court instructed the jury that it "may look to whether the weapon had the actual ability to inflict serious injury under the fact situation and whether the Defendant had the apparent ability to injure the victim seriously through the use of the object during the crime." Tr. at 445–46. We conclude that the trial court did not abuse its discretion by refusing Davis's tendered jury instruction.

### IV. Sixth Amendment Violation

■ Davis asserts that the trial court improperly enhanced his sentence by relying on aggravating circumstances not found by a jury in violation of the Sixth Amendment, citing *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Initially, we observe that Davis was sentenced on January 14, 2005, and *Blakely* was handed down on June 24, 2004. *Id.* Davis, however, failed to make a *Blakely* objection at trial. "A claim is generally considered forfeited if it is not objected to at trial." *Clark v. State*, 829 N.E.2d 589, 590 (Ind.Ct.App.2005). Accordingly, Davis waived his *Blakely* challenge. *See id.* (concluding that defendant forfeited *Blakely* claim where he failed to object at sentencing hearing and his case was not on direct review when *Blakely* was announced).

■ Waiver notwithstanding, Davis's *Blakely* claim is without merit. The trial court sentenced Davis to a twenty-year term for the class B felony robbery conviction [6] and a three-year term for the class D felony resisting law enforcement conviction,[7] to be served concurrently. The trial court found two aggravating circumstances: "a) The Defendant was on Federal probation for a previous armed robbery when he committed this offense of armed robbery; and b) The Defendant has a history of criminal activity." [8] Appellant's App. at 107.

■ Under *Blakely*, a trial court may enhance a sentence based only on those facts that are established in one of several ways: (1) as a fact of prior conviction; (2) by a jury beyond a reasonable doubt; (3) when admitted by a defendant; and (4) when stipulated to by the defendant, or

---

**6.** "A person who commits a class B felony shall be imprisoned for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances." Ind.Code § 35–50–2–5 (2004).

**7.** "A person who commits a class D felony shall be imprisoned for a fixed term of one and one-half (1½) years, with not more than one and one-half (1½) years added for aggravating circumstances or not more than one

(1) year subtracted for mitigating circumstances." Ind.Code § 35–50–2–7 (2004).

**8.** Davis contends that the aggravating factors recited at the sentencing hearing and those listed in the written sentencing order are different. We disagree. The trial court specifically identified two aggravating factors at the sentencing hearing, and those are the same factors that appear in its sentencing order. Tr. at 533; Appellant's App. at 107.

found by a judge after the defendant consents to judicial fact-finding, during the course of a guilty plea in which the defendant has waived his *Apprendi* rights. *Trusley v. State*, 829 N.E.2d 923, 925 (Ind. 2005). Therefore, the trial court properly found that Davis's prior criminal history was an aggravating circumstance. *See id.*

The trial court also found that Davis was on federal probation at the time he committed the current robbery. The State asserts that Davis admitted that he was on probation. We agree. At the sentencing hearing, Davis was offered the opportunity to make corrections to the presentence investigation report ("PSI"), and he made several corrections. Tr. 454–58. Davis did not, however, correct the information in the PSI stating that he was on Federal Probation when he committed this robbery. *Id.* The PSI stated:

> The defendant was placed in Federal Prison and released to Federal Probation Supervision January 20, 2004. The defendant was being supervised by Federal Probation Officer Dwight Wharton at the Indianapolis office. The defendant has a pending violation of probation filed in Federal Court due to his arrest and current conviction in Hancock Coun-

ty Indiana under cause 30C01–0404–FB–00029.

Appellant's App. at 84. Davis noted that the report was incorrect in that it failed to state that he was released from prison to work release on July 22, 2003. Tr. at 455. However, he confirmed that he was released to probation on January 20, 2004. *Id.* At the close of his corrections, the trial court asked Davis if he had anything else he wanted to correct, and he replied, "No." *Id.* at 458. Given that Davis was provided with an opportunity to correct the PSI, made several corrections, and then stated that he had no further corrections, we conclude that Davis admitted that the remainder of the PSI was correct.[9] Accordingly, the trial court properly relied upon the fact that Davis was on federal probation when it enhanced his sentence.[10] Davis's enhanced sentence does not violate his Sixth Amendment rights as set forth in *Blakely*.

### V. Failure to Find Mitigating Circumstances

 Lastly, Davis argues that the trial court improperly overlooked mitigating circumstances in determining his sentence.[11] Sentencing determinations are

9. We recognize that a panel of this Court has recently held that a defendant's "acknowledgement that the pre-sentence report was correct is not, without more, an admission sufficient to support an aggravator based on the nature and circumstances of the crime." *Vela v. State*, 832 N.E.2d 610, 613–14 (Ind.Ct. App.2005). Our opinion is not necessarily contrary to *Vela*'s holding, inasmuch as our opinion is factually distinguishable on two grounds: (1) we consider whether Davis admitted that he was on probation when he committed these crimes for purposes of *Blakely*, not whether he admitted the nature and circumstances of the crimes; and (2) Davis actually made corrections to the PSI, including a correction involving his release to probation, and confirmed the date on which he was released to probation.

10. Our supreme court is currently considering whether the fact that a defendant committed an offense while on probation is "derivative" of criminal history and therefore need not be found by a jury to satisfy *Blakely*. It heard argument on June 21, 2005 in *Ryle v. State*, 819 N.E.2d · 119 (Ind.Ct.App.2004), *trans. granted*, and its decision is pending. Because we decide Davis admitted to being on probation, we need not address whether his probation violation was "derivative."

11. Although Davis asserts that he is challenging the appropriateness of his sentence and cites Appellate Rule 7(B), the body of his argument focuses exclusively on the trial court's failure to find mitigating circumstances. We therefore address the substance of his argument.

within the trial court's discretion. *Cotto v. State*, 829 N.E.2d 520, 523 (Ind.2005). If the trial court relies on aggravating or mitigating circumstances to enhance or reduce the presumptive sentence, it must (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate its evaluation and balancing of the circumstances. *Id.*

> Determining mitigating circumstances is within the discretion of the trial court. A trial court need not regard or weigh a possible mitigating circumstance the same as urged by the defendant. When a defendant alleges that the trial court failed to identify or find a mitigating circumstance, the defendant must establish that the mitigating evidence is both significant and clearly supported by the record. The trial court is not required to make an affirmative finding expressly negating each potentially mitigating circumstance.

*Corbett v. State*, 764 N.E.2d 622, 630–31 (Ind.2002) (citations omitted).

Davis offered the following mitigating factors: (1) he is a former church member and a member of the Rastafarian faith; (2) he was a well-respected student at Craig Middle School; (3) he had been a model inmate at the Hancock County Jail and other correctional facilities in that he obtained his GED, took college classes, and assisted other inmates; and (4) his ten-year-old son would suffer severe hardship. While Davis presents these factors as mitigators, he has not established their significance. We commend Davis for his good behavior and for pursuing further education while in jail, but the trial court found that Davis had already been rewarded for those efforts through good time and education credit. Tr. at 535. We also observe that the trial court is not required to find that a defendant's incarceration will result in undue hardship upon his dependents. *Gray v. State*, 790 N.E.2d 174, 178 (Ind.Ct.App.2003). Based on our review of the record, we conclude that the trial court did not abuse its discretion in failing to find any mitigating factors.

Based on the foregoing, we affirm Davis's convictions and sentence for class B felony robbery and class D felony resisting law enforcement.

Affirmed.

NAJAM, J., concurs.

BARNES, J., concurs in result in part and dissents in part, with opinion.

BARNES, J., concurring in result in part and dissenting in part.

I respectfully dissent from the majority's affirmance of Davis's resisting law enforcement conviction and concur in result in its affirmance of his robbery conviction and sentence.

The majority concludes that the failure to instruct the jury on the elements of resisting law enforcement, to which omission Davis did not object, did not constitute fundamental error. I do not agree. The Indiana Supreme Court has stated, "we have no doubt a total failure to give an instruction detailing the elements of the offense would be available as reversible error on appeal absent compliance with the contemporaneous objection requirement." *Lacy v. State*, 438 N.E.2d 968, 971 (Ind. 1982). The majority acknowledges this statement but characterizes it as "arguably dictum" because the Court went on to hold that there was not a "total failure" to give an instruction on the elements of the offense where such an instruction had been given as a preliminary instruction, though not as a final instruction. *See id.*

I do not think that quote from *Lacy* is dictum that was unnecessary to the resolution of the case. It does appear that if there had been a total failure to give an instruction on the elements of the offense in *Lacy*, there is "no doubt" the Court would have reversed the conviction.

The mere fact that a statement might be characterized as dictum does not mean it is incorrect. The *Lacy* opinion also states, "Certainly appellant is correct in his assertion the giving of an instruction detailing the elements of the offense, or defining or explaining its nature is necessary procedure in a criminal trial." *Id.* It also quotes precedent from the United States Supreme Court holding as follows:

> [W]here the error is so fundamental as to not submit to the jury the essential ingredients of the only offense on which the conviction could rest, we think it necessary to take note of it on our own motion. Even those guilty of the most heinous offenses are entitled to a fair trial. Whatever the degree of guilt, those charged with a federal crime are entitled to be tried by the standards of guilt which Congress has prescribed.

*Screws v. United States,* 325 U.S. 91, 107, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945). The combined effect of *Lacy* and *Screws* is clear: total failure to instruct the jury on the elements of an offense is fundamental error that is not waived for failure to make a contemporaneous objection.

There was a total failure here to instruct Davis's jury on the elements of resisting law enforcement. No such instruction was given either in the preliminary or final instructions. Providing the jury with the charging information against Davis did not cure this error. The information advised the jury of what the State alleged against Davis. No instruction, however, advised the jury that the State had to prove what was alleged in the information or that the information reflected the statutory elements of resisting law enforcement. By contrast, the jury both was provided with a copy of the robbery information and was specifically and separately advised of the statutory elements of robbery and that the State had to prove each of those elements beyond a reasonable doubt. This is what should and must happen in every criminal case, but it did not happen with respect to Davis's resisting law enforcement charge. I vote to reverse that conviction and remand for further proceedings.[12]

I concur in the affirmance of Davis's conviction for robbery with a deadly weapon. I do not subscribe to the majority's analysis of whether the unloaded pellet guns were "deadly weapons." Specifically, the majority places much emphasis on whether the tellers and customers were afraid of the weapons or believed that the guns were "real." I conclude that this should not be a relevant consideration in assessing whether an item is a "deadly weapon" within the meaning of the criminal code. Taken to its extreme, this approach could lead a finger or a stick of butter to be found a "deadly weapon," if a robber were to point the finger or stick of butter from underneath a coat and was able to convince the victim that it was actually a gun.

Indiana Code Section 35–41–1–8 provides that a "deadly weapon" includes, besides firearms, devices or materials "that in the manner it is used, or could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily

---

**12.** I do agree that there is sufficient evidence to support the resisting law enforcement conviction, so double jeopardy would not bar his retrial for this offense if we were to reverse for instructional error. *See Camm v. State,* 812 N.E.2d 1127, 1138 (Ind.Ct.App.2004), *trans. denied.*

injury." In my view, the plain language of this statute requires that a non-firearm item [13] claimed to be a "deadly weapon" be *actually* capable of causing serious bodily injury, not that it appears capable of causing such injury to a victim or bystander. *See Frey v. State,* 580 N.E.2d 362, 364 (Ind.Ct.App.1991), *trans. denied* ("Whether sufficient evidence exists to establish a weapon is deadly is determined by looking to whether the weapon had the *actual ability* to inflict serious injury under the fact situation and whether the defendant had the apparent ability to injure the victim seriously through use of the object during the crime.") (emphasis added).

To the extent that the victims here were afraid of Davis and his accomplice, that is already a necessary element of the base offense of robbery as a Class C felony—taking another's property by force, threatening force, or placing any person in fear. Ind.Code § 35–42–5–1. If there had been no fear or threat of force in this case, there would have been no robbery. The key factor, I believe, that distinguishes using a "deadly weapon" to commit robbery and elevates it to a Class B felony is that there is an actual heightened risk of harm to the victim.

I agree that pellet or BB guns can be considered deadly weapons as defined in Indiana Code Section 35–41–1–8. *Merriweather v. State,* 778 N.E.2d 449, 457 (Ind. Ct.App.2002). I also acknowledge that other cases have found the victim's belief that a weapon was "real" to be a relevant consideration in deciding whether the weapon was "deadly." *See id.; Whitfield v. State,* 699 N.E.2d 666, 670 (Ind.Ct.App. 1998), *trans. denied.* However, I believe the proper analysis for whether a pellet or BB gun is a "deadly weapon" is limited to

whether it actually could have been used to cause serious injury or death, either through its intended use or as a bludgeon. *See Glover v. State,* 441 N.E.2d 1360, 1362 (Ind.1982) (noting evidence that air pistol, when discharged at close range, could result in extreme pain or the loss and impairment of hearing or sight); *Barber v. State,* 418 N.E.2d 563, 568 (Ind.Ct.App. 1981) (noting that "even a blank revolver could be used as a bludgeoning instrument").

Here, as the majority recites there was evidence that the type of gun Davis possessed has in the past caused loss of eyesight, and in fact carried a warning label that it could cause serious injury or death. There was also testimony that this type of gun could be used to bludgeon someone, regardless of whether it was loaded. This evidence was sufficient to support Davis's Class B felony robbery conviction. I would go no farther than this in assessing whether the weapon he used to commit the robbery was a "deadly" one.

Finally, regarding Davis's sentence, I disagree with the majority that he waived his claim of a Sixth Amendment violation by failing to object during a sentencing hearing conducted before our Supreme Court decided *Smylie v. State,* 823 N.E.2d 679 (Ind.2005). *See Muncy v. State,* 834 N.E.2d 215, 218–20 (Ind.Ct.App.2005) (Barnes, J., dissenting in part). That said, however, I agree with the remainder of the majority's analysis of Davis's Sixth Amendment claim. I also fully concur with the remainder of the issues discussed by the majority.

---

**13.** Pellet and BB guns are not "firearms." *See Merriweather v. State,* 778 N.E.2d 449, 457 (Ind.Ct.App.2002).