Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 05 2013, 9:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JANE H. CONLEY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSHUA W. JOYNER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1208-CR-618 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable James B. Osborn, Judge
Cause No. 49F15-1201-FD-4869

**February 5, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Joshua Joyner sold several items to a scrap yard that were later determined to have been stolen. Joyner was charged with theft. At trial, Joyner presented evidence that he was at home with his former girlfriend during the time that the items were taken from their owner. Joyner was found guilty as charged, and he now appeals.

Joyner argues that there was insufficient evidence that he knew that the items were stolen and that the trial court abused its discretion by rejecting an instruction that he proffered concerning his alibi defense. We conclude that there was sufficient circumstantial evidence that Joyner knew that the items were stolen, including testimony that he fled from the police. Joyner's alibi evidence, if believed, would demonstrate that he was not involved in the initial theft of the items; however, he could still be guilty of theft if he knew that the items were stolen. Joyner's proffered instruction, as worded, could have led the jury to believe that he had to be involved in the initial theft to be found guilty. Therefore, we conclude that the trial court did not abuse its discretion by declining to give the instruction, and we affirm Joyner's conviction.

**Facts and Procedural History**

Nancy House lives with her father, Leonard Witt, in Indianapolis. On the morning of January 21, 2012, House was at the kitchen window when she noticed that a motor that Witt had been working on was not in its usual place in front of the garage. House and Witt went outside and discovered that the motor and several other items, including a steam table, a trailer, a wheelbarrow, and a 1959 Cushman scooter, were missing.

House spoke to a neighbor, Mary Ann Davis, who indicated that she had gotten up around 5:30 a.m. to let her dog out and had seen two men wearing hoodies loading items into a blue truck. Davis had not been concerned because she thought that they were having the stuff hauled away.

House called the police and suggested to Witt that they check scrap yards for the missing items. House and Witt went to Westside Auto Parts ("Westside"), where employees indicated that they had received some items fitting the description of the missing items. Witt was taken into the yard, where he was able to identify the scooter, motor, steam table top, and wheelbarrow. House looked at security footage and photographs and was able to identify the missing items loaded in a blue truck.

As House was doing this, the same blue truck pulled into Westside, but then backed out and drove away. Witness testimony varied as to whether the police had already arrived at Westside by this time and whether the truck appeared to be fleeing from the police.

Officer Monica Hodge followed the truck, which stopped when she activated her lights. Officer Hodge determined that the truck was registered to Joyner and that he was the person driving. Amanda Prochaska was in the back seat, and a man identified only as a friend of Joyner's was sitting in the front passenger seat. Officer Erik Stevenson stayed with the truck while Officer Hodge returned to Westside, where she spoke to employees Danny Abner and Lydia Brown, as well as House and Witt. Abner and Brown indicated that Joyner was a regular customer and had brought a load in earlier that day. They were able to supply photographs of the transaction, a copy of Joyner's driver's license, and a receipt. Officer

Hodge brought Abner to the blue truck, and he identified Joyner.

Officer Stevenson read Joyner his *Miranda* rights and asked him whether he had salvaged a scooter. Joyner said that he did not know anything about a scooter. Officer Stevenson then asked Joyner why "the scrap yard had his photo I.D. of him scrapping the scooter." Tr. at 139. Joyner then admitted to scrapping the scooter, but did not admit knowing that it had been stolen. Joyner claimed that a man named Charlie gave it to him, but he provided no further information about Charlie.

Joyner was arrested and charged with class D felony theft. On April 12, 2012, Joyner filed a notice of alibi, which alleged that he was at home with Prochaska, his former girlfriend, at the time of the theft.

A jury trial was conducted on June 20, 2012. Witt, House, Davis, Abner, Brown, Officer Hodge, and Officer Stevenson testified to the foregoing facts. Brown and Officer Hodge testified that Joyner had already started to drive away when the police arrived at Westside, but House and Abner testified that the police were already there when Joyner arrived, and Abner specifically indicated that Joyner appeared to be fleeing the police.

Joyner testified in his own defense and also presented testimony of Prochaska. Prochaska testified that she had called Joyner on January 20, 2012, and offered to clean his house if he would help her purchase some items for her baby. Joyner picked up Prochaska and her baby and brought them to his house. Prochaska cleaned his house and stayed overnight. Prochaska and the baby slept in the bedroom, and Joyner slept on the couch. Prochaska got up at about 3:00 a.m. to give her baby a bottle, and Joyner was asleep on the

couch at that time. Joyner was at home when Prochaska woke up around 9:00 a.m. Prochaska did not think that Joyner could have left during the night, because the dogs would have barked and she would have heard it. She did hear the truck leave during the night and return in the morning. She saw a man walking away from the truck, and there were items in the truck bed that had not been there before.

Joyner testified that he lent his truck to a neighbor – apparently the person he referred to as "Charlie" – the evening of January 20. When the neighbor returned the truck, Joyner did not ask about the items in the truck bed. Joyner stated that he trusted his neighbor and that his neighbor had previously given him metal to scrap. Joyner testified that he sells scrap metal for a living and that he would typically go to Westside two or three times a day. Joyner loaded some additional items into his truck, and then he, Prochaska, and the baby drove to Westside. Joyner dropped off the load, received payment, and then drove back to his house.

Joyner then started loading his truck again. He asked a friend to help him load some heavy items onto the truck. Joyner, his friend, Prochaska, and the baby then returned to Westside. Joyner testified that after he had checked in, his friend reminded him "that he's not allowed in there because he got in a previous fight," so he backed out. *Id*. at 181. Joyner stated that the police were not present at that time, and that he left to drive his friend to a cousin's house. Prochaska also testified that they left Westside to drop off the friend.

Joyner testified that he told Officer Stevenson that he did not steal the scooter but did acknowledge that he had sold it for scrap. Joyner stated that he told Officer Stevenson that Charlie had given it to him. Joyner claimed that he did not know Charlie's last name, phone

5

number, or address, and that he did not help the police find Charlie because he is "not a snitch." *Id*. at 193.

After the close of evidence, the parties discussed final instructions. Joyner tendered an instruction on his alibi defense, which the trial court rejected. Joyner was ultimately found guilty as charged, and he now appeals.

**Discussion and Decision**

Joyner raises two issues: (1) whether there was sufficient evidence that he knew that the items he sold to Westside were stolen; and (2) whether the trial court abused its discretion by declining to give Joyner's proffered alibi instruction.

*I. Sufficiency of Evidence*

Our standard of review for a sufficiency of the evidence claim is well settled:

> When reviewing the sufficiency of evidence supporting a conviction, we will not reweigh the evidence or judge the credibility of witnesses. We must look to the evidence most favorable to the conviction together with all reasonable inferences to be drawn from that evidence. We will affirm a conviction if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.

*Stewart v. State*, 866 N.E.2d 858, 862 (Ind. Ct. App. 2007) (citations omitted).

"A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony." Ind. Code § 35-43-4-2(a). Joyner argues that there is insufficient evidence that he knew that the items he sold to Westside were stolen. "A person

engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

The State argues that Joyner admitted that he stole Witt's property. The page of the transcript cited by the State does not support this contention. Joyner admitted that he sold the scooter as scrap metal; he consistently denied knowing that it or the other items at issue were stolen. We admonish the State to refrain from mischaracterizing the record.

At trial, the State presented two theories. First, the State suggested that Joyner was directly involved in the theft. In support, the State pointed to the fact that Davis testified that she saw two men in hoodies loading up a blue truck, that a photograph of the transaction at Westside shows Joyner wearing a hoodie, and that Joyner used a blue truck to transport the items to Westside. Second, the State argued that even if Joyner was not one of the men directly involved in the theft, he nevertheless knew that the items were stolen, as evidenced by his flight from the police. *See Maxey v. State*, 730 N.E.2d 158, 162 (Ind. 2000) (flight is circumstantial evidence of the defendant's knowledge of guilt). While the evidence is conflicting regarding whether Joyner fled from the police, at least one witness unambiguously testified that Joyner left Westside after noticing that the police were there, and we must consider the evidence favorable to the verdict. As additional circumstantial evidence that Joyner knew that he was involved in criminal activity, the State noted that Joyner did not provide any details about the man who supposedly gave him the items to scrap. In sum, there was evidence to support the State's theories, and a reasonable jury could

7

have believed that Joyner knew that the items were stolen; therefore, we conclude that there was sufficient evidence to support the conviction.

## II. Jury Instruction

Joyner argues that the trial court abused its discretion by rejecting his proffered instruction on his alibi defense. "The manner of instructing a jury lies largely within the sound discretion of the trial court, and we review the trial court's decision only for an abuse of that discretion." *Boney v. State*, 880 N.E.2d 279, 293 (Ind. Ct. App. 2008), *trans. denied*.

> In reviewing a challenge to a jury instruction, we consider: (1) whether the instruction is a correct statement of the law; (2) whether there was evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court.

*Id*.

> A defendant is entitled to have the jury instructed correctly on an essential rule of law. However, before a defendant is entitled to a reversal, he must affirmatively demonstrate that the instructional error prejudiced his substantial rights. Jury instructions are to be considered as a whole, and we will not find that the trial court abused its discretion unless we determine that the instructions taken as a whole misstate the law or otherwise mislead the jury.

*Davis v. State*, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005) (citations omitted), *trans. denied* (2006).

Joyner proffered the following pattern jury instruction:

> You have heard evidence that at the time of the crime charged the accused was at a different place so remote or distant or that such circumstances existed that he could not have committed the crime. The State must prove beyond a reasonable doubt the accused's presence at the time and place of the crime.

Appellant's App. at 68.

The State argued that the instruction would be misleading to the jury. As discussed above, the State presented two theories: either Joyner was involved in taking the items from Witt, or he somehow knew that the items had been stolen, as evidenced by his behavior. Joyner's alibi was relevant to the first theory, but not the second. The State argued that Joyner's proffered instruction could lead the jury to believe that Joyner could only be found guilty if he were personally involved in taking the items from Witt. The trial court agreed with the State: "Well, I don't think there's an objection that it's not the correct statement of law *in a broader sense*. But because we're talking about a crime that occurred over a period of time – and not just one instance in one spot – it makes it problematic to give the instruction." Tr. at 203.

We also agree with this reasoning. Joyner's proffered instruction, as written, suggests that if Joyner's alibi evidence is believed, then he could not have committed the crime. We note that the trial court gave Joyner time to produce an amended instruction that would avoid this problem, but Joyner did not submit a reworded instruction. The essence of the instruction is that the State must prove every element of the offense beyond a reasonable doubt, and that idea was conveyed to the jury by other instructions that did not carry the same potential for confusion as Joyner's proffered instruction. Appellant's App. at 52, 56, 72. Therefore, we conclude that the trial court did not abuse its discretion by rejecting Joyner's proffered instruction.

Affirmed.

KIRSCH, J., and MATHIAS, J. concur.