# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 20 2016, 9:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Earl McCoy
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eric Farrell, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 20, 2016 <br><br> Court of Appeals Case No. <br> 79A04-1508-CR-1290 <br><br> Appeal from the Tippecanoe <br> Superior Court <br><br> The Honorable Randy J. Williams, <br> Judge <br><br> Trial Court Cause No. <br> 79D01-1410-FC-34 |

**Altice, Judge.**

**Case Summary**

[1]     Eric Farrell pled guilty to two counts of Home Improvement Fraud as Class C felonies and four counts of Home Improvement Fraud as Class D felonies. The trial court sentenced Farrell to an aggregate sentence of twenty-two years, with fifteen years to be served in the Department of Correction, three years to be served in community corrections, and four years suspended to supervised and unsupervised probation. The trial court also ordered Farrell to pay restitution in the amount of $53,211.32. On appeal, Farrell challenges his sentence.

## Facts & Procedural History

[2]     Farrell worked as a home improvement contractor from 2009 through 2014. During this time period, Farrell entered into home improvement contracts with several senior citizens who ranged in age from sixty-eight to ninety-two years old. The specific facts giving rise to the charges follow.[1]

[3]     In October 2010, Robert White contacted Farrell to inquire about constructing a porch for his eighty-nine-year-old mother, Josephine White, who suffers from dementia. Farrell's initial cost estimate for the project, which was not in writing, was between $7,000 and $9,000. Despite Robert's request that Farrell deal only with him regarding the project, Farrell approached Josephine and requested $2,000 for materials to start the job, which she paid. Half way through the project, Farrell again approached Josephine and requested payment

---

[1] We have compiled the facts underlying each offense from the probable cause affidavit, guilty plea hearing, and evidence submitted as part of the pre-sentence investigation report.

of $5,000, and Josephine again complied. Before the project was completed, Farrell presented to Josephine a bill for $11,317.15, which she paid. A final inspection of the project by an inspector for the City of Lafayette found a code violation with the steps leading to the porch. Robert spent $400 to correct the violation.

[4] On September 25, 2013, Ralph Smith (Smith), an eighty-one-year-old retired minister, was returning home from his wife's funeral when he was approached in his driveway by Farrell. Farrell indicated that when he was younger, he had been a Sunday school student of Smith's wife and that she had meant a lot to him. Farrell suggested to Smith that he might want to consider painting the exterior of his home in case he decided to sell it in the near future. Smith requested an estimate, but Farrell insisted that Smith not worry about it because he would charge a fair price. Smith also requested a firm bid proposal and references from past customers; however, the following Monday, Farrell showed up with another worker and started painting Smith's house.

[5] Smith started having serious doubts about Farrell after he discovered that most of Farrell's claims were lies. Smith learned that Farrell had no actual business location as he had claimed and that, given his age, Farrell could not have been in his wife's Sunday-school class. Smith told Farrell he wanted him to stop the work he was doing and that he would pay him for what he had completed. Farrell presented Smith with a bill for $6,273.82. Smith objected to the amount, and Farrell told him it was his fault because he stopped the work before the

project was finished. According to research he had done, Smith believed that $2,000 was a generous amount for work similar to what Farrell had completed.

[6] In March 2014, Ralph Hansen (Hansen), who was then ninety-two years old, met Farrell at a Walmart while Hansen was looking for fertilizer. Farrell struck up a conversation and offered to do work for Hansen. Farrell then contracted with Hansen to do landscaping work around Hansen's home without disclosing how much it would cost. Farrell told Hansen that he would pay when the work was done. While Farrell was at Hansen's home doing the landscaping work, he also repaired a leak stain on the ceiling of Hansen's home. Hansen's checkbook, which showed his checking account had a balance of $10,247, was located in a desk drawer in that room. Once the work was completed, Farrell presented Hansen with a bill for $10,247 for the work he had performed. Hansen questioned the amount, and Farrell agreed to reduce the bill to $10,000.

[7] In November 2012, Farrell contracted with sixty-eight-year-old Ronald Getz to remodel Getz's garage into sleeping quarters. Farrell told Getz that the project would cost around $10,000 and that he would need half of that amount as a down payment. On November 30, 2012, Getz withdrew $6,000 from his bank and met Farrell in a parking lot. Getz informed Farrell that he had spoken with his wife and that they had decided not to go through with the remodeling project. Getz offered to pay Farrell $200 for his time. Farrell, however, told Getz that he had already purchased several thousand dollars in materials and that he needed money to cover his costs. Farrell took $5,500 from Getz and told Getz the money would be refunded to Getz by a check from Henry Poor

Lumber. Getz, who remained confused about the transaction, tried to contact Farrell at the number Farrell had provided and found that the number had been disconnected. Getz never received any materials or labor or a refund.

[8] In late 2011, eighty-eight-year-old James Sattler became friends with Farrell. Sattler tried to help Farrell by having him do a few jobs around the house. Sattler also loaned Farrell $5,300 for surgery. In the spring of 2012, Sattler paid Farrell $1,676 for a carpet job and additional money for painting his bathroom. Farrell also talked Sattler into paying him another $6,379 for chimney work on Sattler's home that Sattler did not ask him to do or even think needed to be done.

[9] In November 2009, James and Barbara Hess, who at the time were seventy-three and sixty-eight years of age, respectively, invited Farrell to come to their home in order to give them an estimate for reinforcing the front steps and foundation of their home. Farrell informed them that he would need to do additional work to the residence beyond their initial request. Between November 20, 2009 and December 4, 2009, James gave Farrell three checks totaling $33,346.72, for which he never received any receipts or other documentation. After the last payment, Farrell told James not to speak to Farrell's employees about how much James paid for the project. On November 24, 2014, the Tippecanoe County Building Commissioner visited the Hess residence to inspect the work done by Farrell. The Commissioner confirmed that work had been done where the Hesses indicated Farrell had worked. Based on his experience, the Commissioner estimated the cost of the work he

observed to be approximately $5,000 to $7,000 and opined that $10,000 would have been an "overly excessive amount." *Appellant's Appendix* at 22.

[10] Farrell was charged with numerous counts of home improvement fraud and theft. The incident with Josephine White formed the basis of Count I, which was enhanced to a Class C felony because the contract price was over $10,000 and Josephine was over the age of sixty.[2] The incidents involving Ralph Smith, Ralph Hansen, Ronald Getz, and James Sattler formed the basis of Counts II, III, IV, and V, respectively, which were all enhanced to Class D felonies because each victim was over sixty years of age. The incident with the Hesses formed the basis of Count VII, which was enhanced to a Class C felony because the contract price was more than $10,000 and the Hesses were over the age of sixty. On May 18, 2015, Farrell pled guilty as charged to six counts of home improvement fraud without the benefit of a plea agreement.[3]

[11] The trial court held a sentencing hearing on June 19, 2015. The trial court reviewed the pre-sentence investigation report and letters submitted by the victims. The trial court also considered Farrell's statement during the sentencing hearing and arguments of counsel. The trial court then sentenced

---

[2] *See* Ind. Code § 35-43-6-12 (defining crime of home improvement fraud); I.C. § 35-43-6-13 (setting forth enhancements to crime of home improvement fraud given various factors).

[3] There were also two theft charges, Counts VI (naming Getz as the victim) and VIII (naming the Hesses as the victims), that the trial court merged with the home improvement fraud counts involving the same victims.

Farrell to six years on Counts I and VII (Class C felonies)[4] and two and one-half years on each of Counts II through V (Class D felonies)[5] and ordered all terms be served consecutively for an aggregate sentence of twenty-two years. The court further ordered that fifteen years be served in the Department of Correction, three years be served in community corrections, and four years be suspended to supervised and unsupervised probation. The trial court also ordered Farrell to pay restitution in the amount of $53,211.32. This court granted Farrell's request to file a belated notice of appeal.

## Discussion & Decision

[12] Farrell's argument challenges the sentence imposed in two respects. Farrell claims that the trial court did not adequately appreciate or weigh alleged mitigating factors he advanced for consideration. He also argues that his sentence is inappropriate.

[13] Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual

---

[4] Ind. Code § 35-50-2-6 ("[a] person who commits a Class C felony shall be imprisoned for a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years").

[5] I.C. § 35-50-2-7 ("[a] person who commits a Class D felony shall be imprisoned for a fixed term of between six (6) months and three (3) years, with the advisory sentence being one and one-half (1 ½ ) years").

deductions to be drawn therefrom. *Id.* at 490-91. A trial court may be found to have abused its discretion by (1) failing to enter a sentencing statement; (2) entering a sentencing statement that includes reasons not supported by the record; (3) entering a sentencing statement that omits reasons clearly supported by the record and advanced for consideration; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91. Because a court may impose any sentence authorized by statute "regardless of the presence or absence of aggravating circumstances or mitigating circumstances," a trial court is no longer obligated to weigh aggravating and mitigating factors against each other when imposing a sentence. *See Richardson v. State*, 906 N.E.2d 241, 243 (Ind. Ct. App. 2009) (citing *Anglemyer*, 868 N.E.2d at 490-91).

[14] Farrell argues that the trial court abused its discretion because it failed to consider certain mitigating factors. Specifically, Farrell argues that the trial court did not consider the results of a risk-assessment tool utilized by the Tippecanoe County probation department that indicated he was a low risk to re-offend. Although the parameters of the assessment characterize Farrell as being a low risk to reoffend, the trial court was not required to afford such significant mitigating weight, especially in light of the fact that Farrell had conducted a five-year string of repeated felonies where he swindled senior

citizens. We cannot say that the trial court abused its discretion by not finding this to be a significant mitigating circumstance that warranted a lesser sentence.[6]

[15] Farrell also argues that the trial court failed to consider the hardship to his dependents. A trial court "is not required to find a defendant's incarceration would result in undue hardship on his dependents." *Davis v. State*, 835 N.E.2d 1102, 1116 (Ind. Ct. App. 2005), *trans. denied*. Many people convicted of serious crimes have one or more dependents. Here, the trial court acknowledged that Farrell had an eighteen-year-old daughter. Farrell advanced during sentencing that he had voluntarily taken on fatherly responsibility for children who are not his. Farrell did not identify any undue hardship outside of that which necessarily follows separation from family due to incarceration. Farrell did not establish this factor to be a significant mitigating circumstance.

[16] Finally, Farrell argues that the trial court abused its discretion by conflating his expression of remorse with his decision to plead guilty. Farrell advanced for the court's consideration that he was remorseful. The court discounted this assertion, finding that his actions were not consistent with his claimed remorse. The court noted that while out on bond, Farrell had made no attempt at restitution. The trial court further noted, "it may be a stretch to suggest that you truly accepted responsibility for your actions, beyond pleading guilty." *Transcript* at 62. Indeed, contrary to his expression of remorse, he maintained

---

[6] Even given the result of the risk-assessment, the probation department recommended a sentence of twenty-six years, which is four years more than what the trial court imposed.

he was sorry "that family members of the customers feel that I over charged them." *Appellant's Appendix* at 135. We accept the trial court's determination of credibility with regard to Farrell's remorse. We find no abuse of discretion.

[17] In addition to the above arguments, Farrell argues that his sentence is inappropriate. Despite the fact that the trial court imposed a sentence that is authorized by statute, we may revise Farrell's sentence if, "after due consideration of the trial court's decision, [we] find that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Ultimately, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Thus, "whether we regard a sentence as appropriate . . . turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. In making this determination, the relevant considerations are the length of the aggregate sentence and how it is to be served. *Id*. Farrell bears the burden of persuading our court that his sentence is inappropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012).

[18] With regard to the nature of the offenses, the facts giving rise thereto demonstrate that Farrell deliberately preyed on senior citizens. This was not a case of poor business judgment. Farrell's business practice was to defraud

customers. Depending on the victim, Farrell adjusted his methods and took advantage of their vulnerabilities—their kindness and trustworthiness, diminished mental state, physical burdens, or raw emotional state. Farrell preyed upon Josephine White, who suffered from dementia, by intentionally circumventing her son, his point of contact. Farrell was also willing to lie to gain favor with a grieving widower by telling him that his recently deceased wife had been his Sunday school teacher.

[19] Further, in addition to the financial impact, Farrell's victims, each senior citizens, were hurt in intangible ways such as causing them to be fearful, to be self-doubting, to suffer both emotional and physical stress, and to experience feelings of shame and embarrassment. The Hesses informed the court that they are stressed about their financial future because of the money Farrell took from them, which was nearly $20,000 more than the threshold for a Class C felony. Ralph Hansen submitted a letter to the court in which he stated that he has become fearful and that he doubts himself more than ever.

[20] As noted by the trial court, "the harm, injury, loss or damage suffered by the victims, plural, was significant and greater than the elements necessary to prove the commission of the offense." *Transcript* at 64. The court's statement is a summary of the evidence that many of the victims were well over sixty years of age and some of the amounts charged were outrageously excessive.

[21] With regard to the character of the offender, we note that Farrell has previously been involved with the criminal justice system. After receiving a juvenile

adjudication for theft in 1991, Farrell began his adult criminal history in 1996 when he was nineteen years old and was convicted of misdemeanor contributing to the delinquency of a minor. Later that same year, Farrell was convicted of operating a vehicle without a license, a misdemeanor. In 1997, when Farrell was twenty-one years old, he was sentenced to ten years (with six years executed and four years suspended to probation) for conspiracy to commit burglary. Since that time, Farrell has accumulated a record of arrests, but each time charges were ultimately dismissed. Farrell was thirty-three years old when he began defrauding senior citizens under the guise of home improvement.

[22] The trial court sentenced Farrell to an aggregate sentence of twenty-two years, which was four years less than what was requested by the State and recommended by the probation department. For each conviction, the trial court sentenced Farrell to a term between the advisory and maximum sentence permitted by statute, and then the court ordered each sentence served consecutively to account for the individual victims. Farrell has not met his burden that, given the nature of the offense and character of the offender, a revision of his sentence is warranted. Accordingly, we conclude that Farrell's sentence is not inappropriate.

[23] Judgment affirmed.

[24] Bailey, J. and Bradford, J., concur.