## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 27 2019, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Christopher Taylor-Price
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gregory A. Lowery,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 27, 2019

Court of Appeals Case No.
19A-CR-965

Appeal from the
Marion Superior Court

The Honorable
Linda E. Brown, Judge

Trial Court Cause No.
49G10-1801-CM-1860

**Kirsch, Judge.**

[1] Gregory A. Lowery ("Lowery") appeals his conviction for operating a vehicle while intoxicated ("OWI")[1] as a Class C misdemeanor, contending that there was insufficient evidence to support his OWI conviction because the State failed to prove that Lowery took the medication that caused his driving impairment before the police stopped his vehicle.

[2] We affirm.

## Facts and Procedural History

[3] On January 17, 2018, the State charged Lowery with Count I, OWI endangering a person, a Class A misdemeanor; Count II, driving left of center, a Class C infraction; and Count III, failure to signal for turn or lane change, a Class C infraction. *Appellant's App. Vol. II* at 15-16. On September 11, 2018, the matter proceeded to day one of a two-day bifurcated bench trial. *Id.* at 7. The evidence presented showed that in the early morning hours of April 23, 2017, Officer Elizabeth Saxon ("Officer Saxon")[2] of the Indianapolis Metropolitan Police Department ("IMPD") was driving southbound on College Avenue in Indianapolis, Marion County, Indiana and found herself "a couple of cars back" from a car driven by a man later identified as Lowery. *Tr. Vol. II* at 51. As she followed the car, Officer Saxon saw Lowery twice cross the center line

---

[1] *See* Ind. Code § 9-30-5-2(a).

[2] In April 23, 2017, Officer Saxon's last name was Wilson; her name was changed to Saxon following her marriage. *Tr. Vol. II* at 49. While testifying, the parties referred to her as Officer Saxon, and we will do the same.

and swerve into the northbound lane. *Id*. After Lowery had stopped at a red light, Officer Saxon saw him switch lanes going "from the left lane jerking into the right lane"; Lowery drove in a very "immediate" manner without signaling. *Id*. As the light turned green, Officer Saxon activated her emergency lights. *Id*. at 52. Lowery pulled over into a vacant lot at the intersection of College Avenue and 46th Street. *Id*.

[4] Officer Saxon turned on her spotlight and directed it toward Lowery's rear-view mirror so Lowery could not see her actions. *Id*. Lowery started to adjust his mirror. *Id*. Officer Saxon noted that Lowery was moving around in his vehicle and making "furtive" movements. *Id*. Officer Saxon exited her vehicle, stood by the trunk of her cruiser, and called for back-up. *Id*. While waiting for back-up to arrive, Officer Saxon saw Lowery pick up a piece of paper from "the passenger side." *Id*. Lowery held the piece of paper over his rear-view mirror to block the light; Lowery then started "hollering" out his driver's side window asking for someone to talk to him. *Id*. at 52-53. IMPD Officer Shem Ragsdale ("Officer Ragsdale") and a second officer arrived at the scene less than ninety seconds after being called.[3] Officer Saxon informed the officers that Lowery had been pulled over because of his driving. *Id*. at 53. She explained that she did not immediately approach Lowery because she was concerned about his movements. Furthermore, when he pulled into the lot, Officer Saxon saw

---

[3] The second officer assisted Officer Ragsdale but did not testify at Lowery's trial. Therefore, we focus only on Officer Ragsdale's actions.

Lowery "flip[] [on] his windshield wipers" instead of putting his car into park. *Id*. at 53-54.

[5] Officer Ragsdale testified that he approached the driver's side of Lowery's car, while Officer Saxon approached the passenger side. *Id*. at 54. Reaching the window, Officer Saxon looked into the car to make sure that Lowery did not have a weapon. *Id*. As Officer Ragsdale spoke with Lowery, Officer Saxon saw prescription bottles on the passenger seat. *Id*. at 55-56. Officer Ragsdale asked Lowery to step out of his car. When Lowery refused, Officer Ragsdale removed Lowery from the car. *Id.* at 56. Officer Ragsdale testified that Lowery "appeared to be disoriented, somewhat confused. Uh, he had a, kind of, uh, you know babbling speech, not making much sense in the things that he was saying." *Id*. at 69. Officer Ragsdale tried to talk with Lowery, who "couldn't keep a steady conversation." *Id*. The conversation "just continued to jog." *Id*. Lowery was talking about "time travel and visiting different dimensions." *Id*. Standing at the front of Lowery's car, Officer Ragsdale asked him to lean against the car; however, Lowery "wouldn't stand still." *Id*. at 70. While Officer Ragsdale waited for IMPD Officer Matthew Pankonie ("Officer Pankonie"), who "was working DUI that night," Officer Saxon retrieved the prescription bottles from Lowery's front seat. *Id*. at 60, 70.

[6] After Officer Pankonie arrived at the scene, Officer Saxon told him about Lowery's unusual behavior. *Id*. at 77. Officer Saxon believed that Lowery was impaired. *Id*. Officer Pankonie introduced himself to Lowery and explained why he was there. *Id*. Lowery began speaking; first, he spoke on one topic

"and then without any kind of nexus [he went] to a next topic, and then a third topic." *Id*. Officer Pankonie asked if he could run through some tests, and Lowery agreed. *Id*. Officer Pankonie testified that Lowery was animated, constantly moving, and speaking rapidly. *Id*. at 78. Lowery told Officer Pankonie that he had no physical impairments but said he was on medication. *Id*. at 81.

[7] Officer Pankonie, who had encountered more than one thousand intoxicated individuals during his training and career, administered three tests. *Id*. at 78, 81. Lowery showed no impairment on the first test, the horizontal gaze nystagmus test. *Id*. at 84-85. As for the second test, Officer Pankonie testified that impairment in the walk and turn test is reflected in eight "clues." *Id*. at 88. Officer Pankonie stated that Lowery exhibited seven of those eight clues while completing the test. *Id*. at 87. In the third test, the one-leg stand, impairment is found when the person taking the test exhibits two of the four possible clues. *Id*. at 90-92. Lowery exhibited four of those clues. *Id*. at 91. Officer Pankonie testified that, based on what he had been told and had seen during the latter two tests, he had probable cause to conclude that Lowery had operated his vehicle while intoxicated. *Id*. at 73. Officer Pankonie read Lowery his *Miranda* rights and obtained Lowery's consent for a blood draw. *Id*. at 93. Lowery was transported to Eskenazi Hospital and remained in police custody. *Id*.

[8] Dr. Sheila Arnold ("Dr. Arnold"), a forensic toxicologist, testified that Lowery's blood draw was taken two hours after he was pulled over. *Id*. at 31. Dr. Arnold testified that she found five different drugs in Lowery's system, all

of which were related to prescription drugs that Lowery was taking at the time. *Id.* at 22, 25, 107. Four of those drugs were found in one drug family ("Drug One")[4] and the fifth drug was found in another drug family ("Drug Two").[5] *Id.* at 10, 29. Dr. Arnold testified that Lowery's medications are often prescribed together in order to balance any negative side-effects. *Id.* at 30. While Dr. Arnold testified that the drugs were within a therapeutic range, she noted that Drug Two had been prescribed in a "very high dose." *Id.* at 32, 33. Dr. Arnold recognized the possibility that "an individual can be impaired even though the [drugs] may be within the therapeutic ranges." *Id.* at 28, 33.

[9] Dr. Arnold testified that she found one of Officer Pankonie's observations inconsistent with her drug results. *Id.* at 30-31. She stated that the absence of gaze nystagmus suggested that Lowery took Drug One "shortly" before the officers talked with him. *Id.* at 31. She stated that when Drug One is in your system, it causes horizontal gaze nystagmus much like alcohol does; therefore, if that substance had been in Lowery's system, he would have been unlikely to pass that test. *Id.* Nevertheless, Dr. Arnold did not rule out that Drug Two was already in Lowery's system when he operated his vehicle, saying, "[Drug Two] can actually cause an irregularity in the sleeping patterns themselves that could

---

[4] On July 19, 2019, Lowery filed a motion with this court to exclude from the record confidential medical information, including the names of the drugs he was prescribed. On August 2, 2019, that order was held in abeyance for the writing panel. Because we can decide this case without reference to the specific names of the drugs, we will refer to them as Drug One and Drug Two.

[5] Dr. Arnold testified that some of the four substances in Drug One were not separate drugs but metabolites of another drug. *Tr. Vol. II* at 24-25.

also, uh, weigh into the impairment here." *Id*. at 33. Based on her research, it was Dr. Arnold's opinion that Lowery had been driving impaired. *Id*.

[10] Following the State's case, Lowery made an oral motion for involuntary dismissal of Count I pursuant to Indiana Rule of Trial Procedure 41(B), which the trial court denied. *Id*. at 101-06. Lowery then testified in his own defense. *Id*. at 107-09. He explained that, on the night in question, he was driving down College Avenue in an erratic manner because he was trying to avoid hitting potholes. *Id*. at 107. Lowery also stated that he was taking certain prescribed medications in April 2017, the month that Officer Saxon stopped him. *Id*. at 107-09. Responding to defense counsel's question whether taking his medications had resulted in any trouble in the past, Lowery said, "Yes. . . . traffic stops." *Id*. at 108. In a follow up question, the State confirmed that Lowery had, on a previous occasion, taken medication prior to driving. *Id*. at 108-09.

[11] The trial court found Lowery guilty of Class C misdemeanor OWI, which was the lesser included offense of the charged Count I, OWI endangering a person, a Class A misdemeanor. The trial court also found Lowery had committed the infractions of driving left of center and failing to signal before a lane change. The trial court sentenced Lowery to sixty days, with credit for eight days served and the balance suspended to non-reporting probation. *Appellant's App. Vol. II* at 9. The trial court also suspended Lowery's driver's license for thirty days and

ordered him to attend Advocates Against Impaired Driving Destructive Decision Panel.[6]  *Id.* at 9, 117.  Lowery now appeals.

## Discussion and Decision

Lowery contends that the State presented insufficient evidence to support his conviction for OWI as a Class C misdemeanor.  "When reviewing a challenge to the sufficiency of evidence, '[w]e neither reweigh evidence nor judge witness credibility.'"  *Artigas v. State*, 122 N.E.3d 1003, 1005 (Ind. Ct. App. 2019) (quoting *Gibson v. State*, 51 N.E.3d 204, 210 (Ind. 2016), *cert. denied*, 137 S. Ct 54 (2016)).  "We view the evidence and reasonable inferences drawn therefrom in a light most favorable to the conviction and will affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt."  *Id.* (internal quotation marks omitted).

To convict Lowery of the offense of OWI, the State was required to prove that Lowery operated his car while intoxicated.  *See* Ind. Code § 9-30-5-2(a). Intoxication is defined in relevant part as being under the influence of a controlled substance "so that there is an impaired condition of thought and action and loss of normal control of a person's faculties."  Ind. Code § 9-13-2-86.  Lowery does not dispute that he was operating his car when Officer Saxon

---

[6] We note that the sentencing order reflects that Lowery was ordered to participate in "Victim Impact Panel" but makes no reference to "Advocates Against Impaired Driving Destructive Decision Panel."  *Appellant's App. Vol. II* at 9; *Tr. Vol. II* at 117.

stopped him. Likewise, he does not dispute the evidence presented by Dr. Arnold that his blood draw revealed that he had controlled substances in his system. Instead, Lowery argues that the evidence was insufficient because the State failed to prove that he had those controlled substances in his system *while* he was driving. *Appellant's Br.* at 10.

[14] In support of his argument, Lowery cites to our court's reasoning in *Flanagan v. State*, 832 N.E.2d 1139, 1139 (Ind. Ct. App. 2005). In *Flanagan*, a deputy observed a disabled vehicle on the side of the road around 4:00 p.m. and saw Flanagan and his passenger standing near the rear of the vehicle. *Flanagan*, 832 N.E.2d at 1140. The deputy did not know how long the vehicle had been there yet could not stop to help because he was transporting a prisoner. *Id*. Once back on patrol, the deputy drove back toward the disabled vehicle and saw the men, who had started walking toward a convenience store. *Id*. The deputy offered the men a ride, which they accepted. *Id*. The deputy immediately noticed the odor of alcohol. *Id*. During his conversation with the men, the deputy observed that Flanagan had red, watery eyes and his speech was slurred. *Id*. Flanagan submitted to a portable breath test, which he failed. *Id*.

[15] Before driving Flanagan to the police station, the deputy took Flanagan to his vehicle so he could retrieve some of his personal belongings. *Id*. The key to the car was in Flanagan's pocket. *Id*. At the police station, a certified breath test was administered at 6:00 p.m. and showed that Flanagan's blood alcohol content was .22, well over the legal limit. *Id*. When the police went to Flanagan's car to secure it, they found empty beer cans in paper bags on the

floorboards behind the driver's seat. *Id.* Flanagan was charged, and a jury found him guilty of OWI and public intoxication but acquitted Flanagan of operating a vehicle with .15 or more blood alcohol content. *Id.* at 1140-41.

[16] On appeal, Flanagan argued that while there was evidence that he operated a vehicle and was intoxicated, there was insufficient evidence that he drove *while* intoxicated. *Id.* at 1140. Our court agreed, finding that the critical piece of information—the timing of Flanagan's alcohol consumption—could not be discerned. *Id.* at 1141. When the deputy first came upon Flanagan's already disabled vehicle, the deputy did not know how long the car had been by the side of the road. *Id.* at 1140. Being unable to stop, it was only later that the deputy returned to help Flanagan and his passenger. *Id.* Once inside the cruiser, the deputy noted Flanagan had red, watery eyes, slurred his words, and smelled of alcohol. *Id.* Our court found:

> [T]here was no evidence presented in this case as to when Flanagan consumed alcohol. This is a critical piece of evidence without which the State cannot sustain its burden. This is so because it could be that Flanagan consumed beer after the vehicle broke down, and when the beers were all gone, the men decided to venture to a nearby store to call for assistance.

*Id.* at 1141. The *Flanagan* court concluded that "the State failed to meet its burden of proving beyond a reasonable doubt that Flanagan operated a vehicle while intoxicated," and reversed his conviction. *Id.* at 1141-42.

[17] Lowery argues that evidence for reversal of his OWI conviction is stronger here than in *Flanagan*. Lowery first points to Officer Saxon's testimony that Lowery

made furtive movements and reached into the passenger seat, the place where the prescription bottles were found. *Appellant's Br.* at 14-15. Lowery suggests that, "because he was anxious as he waited for officers to approach," it was "entirely possible if not probable that [he] took his medication while being pulled over and waiting for the officers." *Id.* at 11, 15. Second, Lowery contends that the scientific evidence supports this interpretation. *Id.* at 15. Dr. Arnold testified that she believed Lowery ingested Drug One "shortly before the interaction with the officer." *Tr. Vol. II* at 31. Dr. Arnold came to this conclusion because Lowery would have failed the horizontal gaze nystagmus test if he had already taken Drug One, yet Lowery passed the test. *Id.* Third, Lowery argues that his apparent impairment was, in fact, the result of his efforts to avoid potholes. *Id.*

[18] We, however, find *Flanagan* to be distinguishable from the present case. Here, Lowery was in the sight of one of the officers when he was driving erratically, when he was stopped, and when he had his blood drawn at the hospital. Being under that observation, Lowery could have consumed his pills no later than the time the officers appeared at his car door. However, as soon as Lowery was removed from his vehicle he already appeared disoriented, somewhat confused, and he was talking about time travel and visiting different dimensions. *Id.* at 69. Lowery was babbling and did not make much sense in the things he was saying. *Id.* While talking with Officer Pankonie, Lowery continued to jump from topic to topic. *Id.*

[19] Officer Pankonie, having observed Lowery's rapid speech, his confused state, and the clues of impairment in the latter two sobriety tests, the walk and run test and the one-leg test, opined that Lowery was impaired. *Id.* at 92. Stated differently, he said he believed that Lowery "had ingested some substance that caused him to not be able to safely operate a motor vehicle." *Id.* Dr. Arnold also believed that Lowery was impaired. *Id.* at 33. Discounting the presence of Drug One, it was Dr. Arnold's belief that the presence of "[Drug Two] can actually cause an irregularity in the sleeping patterns themselves that could also, uh, weigh into the impairment here." *Id.* Based on her research and the results of the drug screen, it was Dr. Arnold's opinion that Lowery had been driving impaired. *Id.*

[20] The trial court heard Lowery's theory that he was driving erratically when Officer Saxon stopped him because he was trying to avoid potholes on College Avenue. Lowery stated he had been prescribed medications and, on the night in question, he had taken his usual dosage; an amount that Dr. Arnold testified was a "very high dose." *Id.* at 32, 33. 108. The trial court also heard the State's witnesses say that Lowery had controlled substances in his system, he had on prior occasions taken his medication prior to operating a vehicle, he was driving in an impaired manner, and his speech and behavior were those of an intoxicated person. The trial court believed the evidence of and witnesses for the State. "When reviewing a challenge to the sufficiency of evidence, '[w]e neither reweigh evidence nor judge witness credibility.'" *Artigas,* 122 N.E.3d at 1005. Based on the evidence and our standard of review, we find the State

presented sufficient evidence to support Lowery's conviction for OWI as a Class C misdemeanor.[7]

[21] Affirmed.

Baker, J., and Crone, J., concur.

---

[7] The trial court also found that Lowery committed the Class C infractions of driving left of center and failing to signal his intention to turn or change lanes. *See* Ind. Code §§ 9-21-8-2(a), 9-21-8-25, 9-21-8-49. On appeal, Lowery argues: "The State failed to prove beyond a reasonable doubt that Lowery crossed the center line twice and failed to signal when turning due to impairment rather than road conditions." *Appellant's Br*. at 15-16. Here, Lowery has waived this argument because he did not offer reasoning or cite to any authority in his brief to support his position that there was insufficient evidence to find he committed these two infractions. *See Davis v. State*, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied.* Likewise, even if the issue was not waived, the State only had to prove "by a preponderance of the evidence" that Lowery committed the infractions. Ind. Code § 34-28-5-1(d). Officer Saxon testified that she saw Lowery cross the center line twice and change lanes without signaling. *Tr. Vol. II* at 51. Lowery offered the explanation that he was just trying to avoid the potholes on College Avenue. As factfinder, it was within the trial court's purview to believe the State and find that Lowery committed these infractions; on appeal, we do not reweigh the evidence or assess the credibility of witnesses. *Preston v. State*, 735 N.E.2d 330, 332 (Ind. Ct. App. 2000). There was sufficient evidence to support the finding that Lowery committed these two infractions.